1998-NMCA-052

957 P.2d 71

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jackie PALMER, Defendant–Appellant.**

No. 17738.

Court of Appeals of New Mexico.

Feb. 19, 1998.

Certiorari Denied March 30, 1998.

Tom Udall, Attorney General, M. Anne Wood, Assistant Attorney General, Santa Fe, for Appellee.

Liane E. Kerr, Albuquerque, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant Jackie Palmer appeals his conviction on one count each of criminal sexual penetration, contrary to NMSA 1978, Section 30–9–11 (1993), incest, contrary to NMSA 1978, Section 30–10–3 (1963), and contributing to the delinquency of a minor, contrary to NMSA 1978, Section 30–6–3 (1990). On appeal, Defendant argues that his judgment and sentence should be reversed because he was denied procedural due process as a result of a preindictment delay and because the trial court erred in its order of restitution. We affirm.

### Facts

{2} Defendant is the victim's uncle. The victim was fifteen years old at the time of the incidents in question, which occurred on May 22 and 23, 1994. Almost two months later, on July 15, 1994, the victim told her mother what Defendant had done to her, and her mother called the police. The police conducted an investigation, contacted Defendant, and filed a report on July 19, 1994. The report was turned over to the district attorney's office on August 5, 1994. Due to personnel turnover and case backlog, the district attorney's office did not file a criminal complaint in magistrate court until July 10, 1995. A grand jury indicted Defendant on July 20, 1995.

{3} Defendant filed a motion to dismiss for preindictment delay which the district court denied after a hearing. Defendant then entered a plea of "no contest" to the three aforementioned counts, reserving the right to appeal the denial of the motion to dismiss for preindictment delay. At the sentencing hearing, the district court sentenced Defendant to six years' imprisonment, suspended two years of the sentence, and ordered two years of probation following imprisonment. The district court also ordered Defendant to make restitution payments of $100 per month, beginning immediately, to provide for mental health counseling for the victim.

### Preindictment Delay and Procedural Due Process

{4} Defendant asserts that he was denied procedural due process by the delay of twelve months between completion of the investigation against him and his indictment by a grand jury. In determining whether a preindictment delay denied Defendant his right of procedural due process, we conduct "an independent review of the record and the law." State v. Lewis, 107 N.M. 182, 184, 754 P.2d 853, 855 (Ct.App.1988); State v. Grissom, 106 N.M. 555, 565, 746 P.2d 661, 671 (Ct.App.1987). Our Supreme Court has adopted a two-part test for whether a defendant has been denied procedural due process by preindictment delay. Gonzales v. State, 111 N.M. 363, 365, 805 P.2d 630, 632 (1991). First, the defendant must show prejudice to his or her defense as a result of the delay and, second, the defendant must show that the state intentionally caused the delay in order to gain a tactical advantage. Id.

{5} Defendant argues that the preindictment delay caused him prejudice by denying him the opportunity to have himself medically tested in support of his defense of physical impossibility of penetration at the

time in question. At the hearing on his motion to dismiss, Defendant indicated that he was gathering medical records and letters from his doctors, presumably in support of his alleged impotence. But Defendant never made any attempt to bring this evidence to the attention of the district court. Nor has Defendant ever argued that a witness such as his doctor or his wife could not have testified as to his condition at the time of the incident. *See Lewis,* 107 N.M. at 185, 754 P.2d at 856 (actual prejudice not shown when the defendant failed to demonstrate that the evidence sought by him "could not have been obtained from other sources"). Having made no showing whatsoever, Defendant's claim as to his medical condition is too vague to support his assertion of prejudice. *See Gonzales,* 111 N.M. at 365, 805 P.2d at 632 ("[T]he term 'actual prejudice' evinces a threshold of certainty.").

■ {6} Defendant next asserts that the length of delay in this case is presumptively prejudicial, relying on *Zurla v. State,* 109 N.M. 640, 646, 789 P.2d 588, 594 (1990). Defendant acknowledges that *Zurla* is not a preindictment delay case, but a speedy trial case. *Id.* at 642, 789 P.2d at 590. The distinction between preindictment delay and right to a speedy trial is important. Our Supreme Court has held that the due process protections of the Sixth Amendment right to a speedy trial are triggered by "actual restraints" on a defendant's liberty, such as occur upon arrest. *Salandre v. State,* 111 N.M. 422, 425–26, 806 P.2d 562, 565–66 (1991). *Salandre* recognized that the United States Supreme Court has explicitly refused to "'extend the reach of the amendment to the period prior to arrest.'" *Id.* (quoting *United States v. Marion,* 404 U.S. 307, 321, 92 S.Ct. 455, 463–64, 30 L.Ed.2d 468 (1971)). Also, the concept of presumptive prejudice based on length of delay is not needed to protect the due process rights of defendants during the period prior to arrest because those rights are principally protected by applicable statutes of limitation. *Gonzales,* 111 N.M. at 364, 805 P.2d at 631. Here, Defendant's arrest and indictment took place within the statutes of limitation for each count, so we reject Defendant's argument that the de-

lay in this case was presumptively prejudicial.

■ {7} Defendant also complains of prejudice in that he suffered considerable anxiety and concern during the period of delay, in particular whenever he saw a police car. This argument is not relevant, however, because the prejudice afforded protection by procedural due process is prejudice which "impact[s] the defense," not the defendant. *Id.* at 365, 805 P.2d at 632.

{8} Defendant makes additional arguments claiming prejudice to his defense unsupported by authority and for the first time on appeal. We will not address these arguments. *See State v. Gomez,* 1997–NMSC–006, ¶¶ 14, 29, 122 N.M. 777, 932 P.2d 1 (court need not review arguments made for the first time on appeal); *In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (court will not review arguments that are unsupported by any cited authority).

{9} The district court found that Defendant had failed to demonstrate "any prejudice at all" on account of the delay in indicting in this case, and after independent review of the facts and law, we agree. Therefore, we need not reach the second prong of the *Gonzales* test, and we affirm the district court's denial of Defendant's motion to dismiss for preindictment delay.

### District Court's Order of Restitution

{10} Defendant asserts that the district court erred by ordering restitution. Defendant assigns four errors to the restitution order arguing that: (1) restitution may only commence with probation or parole, not upon sentencing or incarceration; (2) the district court did not consider Defendant's ability to pay restitution; (3) the order to pay the victim's counseling costs is not reasonably related to Defendant's rehabilitation; and (4) the order requiring Defendant to make the payments to the victim's mother is improper because it does not compensate the victim. Proper remedies for a sentencing error include reversal and remand for resentencing, or severance of the illegal part of a sentence, but not reversal of the underlying conviction, as Defendant argues. *See State v. Pando,*

1996–NMCA–078, ¶¶ 13–21, 122 N.M. 167, 921 P.2d 1285 (allowing severance of illegal part of sentence); *State v. Platt*, 114 N.M. 721, 725, 845 P.2d 815, 819 (Ct.App.1992) (district court ordered to redetermine the amount of restitution).

{11} We agree with Defendant that the district court may only impose a sentence in accordance with the law. *See State v. Crespin*, 96 N.M. 640, 643, 633 P.2d 1238, 1241 (Ct.App.1981). In ordering restitution, the district court must comply with the victim restitution statute. *See* NMSA 1978, § 31–17–1 (1993); *State v. Whitaker*, 110 N.M. 486, 492, 797 P.2d 275, 281 (Ct.App. 1990). We address each of Defendant's arguments in order to determine whether the district court improperly ordered restitution.

### 1. *Commencement of Restitution upon Sentencing or Incarceration*

{12} Defendant asserts that he can be ordered to pay restitution only during periods of probation or parole, not while he is incarcerated. Although the State concedes this issue, we are not bound to accept the State's concession. *State v. Gross*, 98 N.M. 309, 310, 648 P.2d 348, 349 (Ct.App.1982); *see also State v. Maes*, 100 N.M. 78, 80–81, 665 P.2d 1169, 1171–72 (Ct.App.1983) (appellate court will review record for sufficiency of the evidence notwithstanding state's concession of error). In *Gross*, the defendant urged and the state conceded that Section 31–17–1(B) permits the district court to impose restitution only if the options of deferment or suspension are applied to the defendant's sentence. 98 N.M. at 310, 648 P.2d at 349. Disagreeing, we interpreted Section 31–17–1(B) "to allow an order of restitution as a part of the sentence in all criminal convictions, but to absolutely require it when the trial court exercises the discretion permitted by [Section] 31–20–6 [allowing deferment or suspension]." *Gross*, 98 N.M. at 310–11, 648 P.2d at 349–50.

{13} Relying on our interpretation in *Gross* that Section 31–17–1(B) was not an exclusive provision, in *Whitaker*, we held that the victim restitution statute allows the district court authority "to include in a sentence a provision for prompt payment of full or partial restitution, without having to await commencement of probation or parole." 110 N.M. at 493, 797 P.2d at 282. We recognized that the state policy behind the victim restitution statute requires "that restitution be made by each violator of the Criminal Code." *Id.* (quoting Section 31–17–1(A)). We also stated that if restitution were delayed for years until parole, the victim "may not be truly compensated, even if paid 'in full'." *Whitaker*, 110 N.M. at 493, 797 P.2d at 282. We uphold our decisions in *Whitaker* and *Gross*.

{14} The State's concession relies upon this Court's statements in *State v. Morris*, 109 N.M. 726, 790 P.2d 523 (Ct.App.1990). *Morris*, decided one month after *Whitaker*, and also founded upon the state's concession, reversed the district court's order of restitution from defendant's wages during incarceration without discussion. *Morris*, 109 N.M. at 727, 790 P.2d at 524. We overrule *Morris* to the extent that it is inconsistent with our holding in this case and in *Whitaker* and *Gross*.

### 2. *Defendant's Ability to Pay Restitution*

{15} Defendant contends that the district court did not consider his ability to pay and that the court erred by imposing restitution in the amount of $100 per month "given the lack of financial information before the court on this particular indigent defendant." The record indicates, however, that the district court had before it a presentencing report indicating that Defendant's income was $900 a month. The court deemed the $100 per month in restitution to be "a small amount to pay for the damage you've caused." Defendant's counsel expressed concern that Defendant's "source of income is from government payments which will be suspended once he is incarcerated." The court then ordered Defendant to execute an allotment to the victim from his veteran's disability benefits to "see if that flies."

{16} We do not know the content of the presentencing report as Defendant failed in his obligation to bring forth the full record for review. *See State v. Martin*, 101 N.M. 595, 603, 686 P.2d 937, 945 (1984) (matters

not of record cannot be reviewed on appeal). The district court was in the best position based upon the information in the presentencing report to determine Defendant's ability to pay. As a result, we affirm the order in this regard. If Defendant is unable to pay, either because his disability payments cease or otherwise, he may return to the district court for review of the restitution order. *See* § 31–17–1(C), (F).

### 3. *Relationship of Restitution to Defendant's Rehabilitation*

{17} Defendant argues that the restitution requirement that he pay $100 toward the costs of counseling for the victim is not reasonably related to his rehabilitation, especially since the victim or the State did not urge payment. We find this argument without merit. The purpose of the victim restitution statute is to remind the defendant of his wrongdoing and help "to make whole the victim of the crime to the extent possible." *State v. Lack,* 98 N.M. 500, 505, 650 P.2d 22, 27 (Ct.App.1982). Even assuming, without deciding, that a rehabilitative purpose is required, " '[a]n effective way to awaken appellant's sense of social responsibility and aid in his rehabilitation is to require him to repay the costs society has incurred as a result of his misconduct.' " *Id.* at 506, 650 P.2d at 28 (quoting *State v. Balsam,* 130 Ariz. 452, 636 P.2d 1234, 1235 (Ariz.Ct.App.1981)). We have no difficulty viewing the district court's *sua sponte* order for payment towards the victim's counseling costs to be reasonably related to Defendant's rehabilitation in this case.

### 4. *Restitution Payments to Victim's Mother*

{18} Defendant contends that it was error for the district court to order that the restitution payments be made to the victim through her mother. The court ordered Defendant to pay $100 per month to the victim's mother for the victim's mental health counseling and to execute an allotment from his "Veteran's Administration benefits for the payment of this $100 to [the victim's mother] for [the victim]." Defendant argues that the victim's mother was not the victim

under the restitution statute and also that *State v. Madril,* 105 N.M. 396, 397, 733 P.2d 365, 366 (Ct.App.1987), does not permit restitution to be paid to the victim's mother because restitution requires "a direct, causal relationship between the criminal activities of a defendant and the damages which the victim suffers." A review of the record below indicates that Defendant failed to preserve this issue.

{19} Because Defendant did not call this issue to the trial court's attention, we do not have a sufficient record upon which to rule that there was any error in ordering the victim's counseling costs to be paid to the victim's mother. The victim was a minor living at home at the time of sentencing. Her mother was responsible for her care and well-being. The State presented testimony that the victim was suicidal and in need of mental health counseling. There is nothing in the record to suggest any state of facts other than that the victim's mother would use Defendant's restitutionary payment as ordered by the court. Moreover, the victim restitution statute contemplates payment to someone other than the victim. *See* § 31–17–1(C) ("Restitution payments shall be made to the clerk of the court unless otherwise directed by the court.").

### Conclusion

{20} For the foregoing reasons, we affirm Defendant's judgment and sentence.

{21} **IT IS SO ORDERED.**

HARTZ, C.J., and PICKARD, J., concur.