**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                              **NO. 26,523**

**JOEL CORDOVA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Peggy J. Nelson, District Judge**

Gary K. King Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Nancy M. Hewitt, Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

Defendant appeals his convictions for two counts of criminal sexual penetration

of a minor (CSPM), and four counts of criminal sexual contact of a minor (CSCM).

Defendant's arguments on appeal concern the exclusion of certain evidence, pre-indictment delay, and violation of his double jeopardy rights. As discussed in this opinion, we affirm Defendant's convictions.

**BACKGROUND**

At the time of the incidents in this case, Kathy L. (Kathy) was living in Taos with her two daughters from a previous relationship, and Defendant was working as a police officer for the Town of Taos. Defendant and Kathy began a relationship sometime in 1995. Shortly after meeting Defendant, Kathy and her daughters moved into Defendant's home. After two months, when Defendant asked them to leave, Kathy and her daughters moved into an apartment. However, Defendant and Kathy continued their relationship. After about another year, Kathy and her daughters moved back into Defendant's home. In 1998, Kathy and Defendant were married.

In March 2000, Kathy's oldest daughter (referred to in this opinion as A.R.) told Kathy that Defendant had molested her. When confronted by Kathy, Defendant denied the allegations. Kathy and Defendant took A.R. to speak to the pastor at the church they attended. Pastor Caldwell and his wife (the Caldwells) met with the couple and with A.R. According to Pastor Caldwell, A.R. described two incidents where Defendant rubbed against her while they were both fully clothed. Because Pastor Caldwell decided that no criminal behavior had occurred, he took no action.

After A.R. told Kathy that Defendant had molested her, Kathy began to notice behavioral changes in A.R. Kathy testified that A.R. was angry with Kathy and did not want to be "at the house." A.R. began to drink alcohol and became very protective of her younger sister. Kathy also noticed that Defendant became more possessive and controlling. Some time after the visit with the Caldwells, Defendant moved a "very, very young" girl into the home and "set her up as an authority figure." During that time, Defendant made comments to Kathy that A.R.'s allegations could not "get out," that it would "ruin" him. Based on the behavioral changes in A.R., Defendant's decision to move a young girl into the home, stories Kathy had heard concerning Defendant, and Defendant's comments, Kathy feared that A.R. was not safe with Defendant. In March 2001, Kathy implemented a plan, which she kept secret from Defendant, to take her daughters and move to Georgia. After arriving in Georgia, Kathy and her daughters received counseling. Kathy contacted an acquaintance in the Taos district attorney's office and reported the allegations made by A.R. No action was taken at that time.

In June 2002, when she reached the age of eighteen, A.R. moved back to New Mexico and lived with various relatives, first in Taos for a few months and then in Albuquerque. In July 2003, while living in Albuquerque and attending school, A.R. visited a medical clinic. On the questionnaire she was given, she indicated that she

3

had been sexually abused in the past. She spoke to the nurse about the abuse and was told that the clinic was required to report her allegations to police. After a report was made by the clinic, the State began its investigation on or about July 21, 2003. Defendant was indicted on charges of sexual abuse on February 24, 2005. Defendant was charged with twenty-four counts of CSPM and twenty counts of CSCM. Following a jury trial, Defendant was found guilty of two counts of CSPM and four counts of CSCM. Defendant appeals.

**DISCUSSION**

Defendant claims that the district court erred in excluding evidence that purportedly would have shown that A.R. habitually used false accusations of sexual abuse for purposes of manipulation. Defendant also claims that the delay between disclosure of the allegations of abuse and filing of the indictment violated his right to due process and that his convictions for CSPM and CSCM violated his right to be free from double jeopardy, particularly because there is nothing to indicate what evidence the jury relied on in reaching its decision.

**Exclusion of Evidence**

Defendant sought to admit into evidence two items that reportedly pertained to prior allegations made by A.R. of abuse against herself and her younger sister. According to Defendant, proof of prior allegations of abuse was contained in a file

4

generated by the Children, Youth and Families Department (CYFD) and in a statement made by A.R. to an examining nurse at the Albuquerque clinic. Defendant also sought to review the file of an attorney that represented someone in a different case who was allegedly named as having sexually assaulted A.R. Defendant claims that he did not seek admission of the evidence to show that A.R. or her sister had accused others, falsely or truthfully, in the past. Defendant wanted the evidence admitted to attack A.R.'s credibility and to show that A.R. "knew how to manipulate situations to get her own way" by making accusations of sexual abuse and, in this case, she used her knowledge "to get [Defendant] out of her household."

Relevant evidence may be excluded if the district court determines that the probative value of the evidence is outweighed by the danger of unfair prejudice to the defendant. Rule 11-403 NMRA; *see State v. Jordan*, 116 N.M. 76, 78-79, 860 P.2d 206, 208-09 (Ct. App. 1993). The district court has great discretion in applying the balancing test under Rule 11-403, and we will not reverse the district court's decision absent abuse of that discretion. *See Jordan*, 116 N.M. at 78-79, 860 P.2d at 208-09; *see also* Rule 11-413(A) NMRA (providing that in sex crimes cases, "evidence of the victim's past sexual conduct, opinion evidence thereof or of reputation for past sexual conduct shall not be admitted unless, and only to the extent that the court finds, that evidence of the victim's past sexual conduct is material and relevant to the case and

that its inflammatory or prejudicial nature does not outweigh its probative value").

Defendant argued below that A.R. learned from her mother how to manipulate situations by making false sexual accusations. To support his theory, Defendant wanted to introduce into evidence an alleged report made by A.R. to CYFD that her mother's previous boyfriend had sexually molested her younger sister. Defendant also wanted to introduce A.R.'s medical records, which would purportedly show that A.R. told an examining nurse that she had been sexually assaulted two days prior to the exam at the clinic in July 2003. Finally, Defendant wanted access to the records of an attorney who represented Kathy during her divorce from A.R.'s father. Defendant believed that the attorney's file contained evidence regarding previous sexual abuse allegations made by A.R.

Prior to trial, the parties agreed that the district court should conduct an in camera review of all the files. The district court reviewed the files and concluded that they contained no information related to allegations of abuse by A.R. or by Kathy. The district court stated that Dr. Lensen's report indicated that when asked, A.R. denied she had been sexually abused. The district court also discussed some of the contents of the CYFD report, including the interview of A.R. by a psychologist about allegations of sexual abuse at a home day care where the alleged victims were small children and included A.R.'s sister. Finally, the district court stated that the attorney's

file contained references to "some kind of sexual abuse" related to A.R.'s sister. We have also reviewed the sealed documents, and we agree with the district court's determination that the files do not contain information regarding allegations of sexual abuse made by A.R. or Kathy. There is nothing in the sealed documents that would have supported Defendant's theory that A.R. learned from her mother to concoct stories of sexual abuse for manipulation purposes. As noted by the district court, there are indications that A.R. was interviewed about alleged sexual molestation of others, but there is no information to support Defendant's claims that A.R. made allegations of sexual abuse against Kathy's former boyfriend. We hold that the district court did not abuse its discretion by excluding the evidence contained in the sealed documents.

**Pre-Indictment Delay**

Defendant contends that the delay in bringing him to trial violated his due process rights. In his brief, Defendant initially refers to the five years between the time of "disclosure" and trial, but later focuses on the time between March 2001, when Kathy first contacted the district attorney's office in Taos, and November 2005, when the trial commenced. Defendant discusses other dates, including July 2003, when A.R. visited the medical clinic and revealed that she had suffered sexual abuse, and March 2004, when the Caldwells were interviewed. Ultimately, Defendant claims that there was a fifty-six month delay, and he was prejudiced by the delay because, if

he had been informed earlier of the dates on which the offenses were alleged to have occurred, he could have investigated his business and personnel records and found other witnesses who could provide him with an alibi on those dates.

In determining whether a pre-indictment delay denied Defendant his right of procedural due process, we conduct an independent review of the record and the law. *State v. Palmer*, 1998-NMCA-052 ¶ 4, 125 N.M. 86, 957 P.2d 71; *State v. Grissom*, 106 N.M. 555, 565, 746 P.2d 661, 671 (Ct. App. 1987). Our Supreme Court has determined that a two-prong test applies in cases involving pre-indictment delay. *Gonzales v. State*, 111 N.M. 363, 365, 805 P.2d 630, 632 (1991). The test requires a defendant to first establish prejudice and to then show that the prosecution intentionally delayed the case in order to gain a tactical advantage. *State v. Palmer*, 1998-NMCA-052, ¶ 4, 125 N.M. 86, 957 P.2d 71. With respect to the prejudice prong, Defendant has the burden of persuasion, and prejudice will not be established by mere conjecture, vague, or conclusory allegations of prejudice based on passage of time or absence of witnesses, nominal prejudice, or speculation. *See Gonzales*, 111 N.M. at 365, 805 P.2d at 632.

Defendant claims that his defense was impaired because he could have investigated records or found alibi witnesses if he had been informed of the allegations on a date earlier than the filing date of the indictment on February 24,

8

2005. Defendant argues that he would have been able to "investigate business and personnel records and could have found other witnesses who could provide him with an alibi for [the] dates." Defendant does not claim, for example, that the business and personnel records he refers to were destroyed, lost, or otherwise unavailable once he received notice by way of the indictment. Defendant does not claim that his alibi witnesses were no longer available or were unable to recall the time periods listed in the indictment. Defendant argues only that his defense might have been stronger if he had been able to locate evidence showing that it was not possible for him to have committed the alleged offenses on the dates included in the indictment. In other words, Defendant's claim of prejudice is based only on conjecture, speculation, and conclusory statements that alibi witnesses would have been found or that information in business and personnel records in general would have supported his defense. Defendant's assertions cannot satisfy the prejudice prong of the test outlined in *Gonzales* and, therefore, Defendant failed to meet his burden of persuasion in this case. *See id.* at 365, 805 P.2d at 632.

Moreover, Defendant presented no evidence to show that the State intentionally delayed bringing him to trial in order to gain a tactical advantage. *See id.* Defendant claims that it is unreasonable to require him to show that the State intentionally delayed trial in order to gain an advantage. Defendant argues that a showing of gross

9

negligence should be sufficient and that the delay of over five years from when the offenses allegedly occurred should be considered presumptively prejudicial, as it would be in a speedy trial case. Defendant claims that the length of the delay alone establishes actual prejudice.

Defendant's arguments are contrary to precedent of our Supreme Court. *See id.* at 363-66, 805 P.2d at 630-33; *see also Salandre v. State*, 111 N.M. 422, 425 n.1, 806 P.2d 562, 565 n.1 (1991) (explaining that due process with respect to pre-indictment delay is to be distinguished from due process regarding Sixth Amendment speedy trial rights). We therefore reject Defendant's arguments. *See State ex rel. Martinez v. City of Las Vegas*, 2004-NMSC-009, ¶¶ 20, 22, 135 N.M. 375, 89 P.3d 47 (holding that this Court remains bound by Supreme Court precedent). Defendant did not meet either prong of the test outlined in *Gonzales*. Therefore, Defendant failed to establish that his due process rights were violated.

**Double Jeopardy**

After the jury made its decision, Defendant filed a motion for a new trial claiming violation of his double jeopardy rights. Defendant pointed out that he was indicted on forty-four counts of CSPM and CSCM, but was found not guilty on all but six counts. Two of the guilty verdicts, for Counts 15 and 16, were for offenses occurring between February 12 and 13, 1997, and the State presented evidence that

10

Kathy was in the hospital on those dates. Defendant claimed, however, that the other four guilty verdicts were for offenses that occurred between January 3, 1997, and April 2, 1997, a time span that included the dates of the offenses described in Counts 15 and 16. Defendant argued that the jury was not advised that it must find that any offenses that might have occurred between January 3 and April 2, 1997, were separate from those that occurred on February 12 and 13, 1997. Defendant claimed that "[s]ince the jury did not convict on any other counts, it clearly found the evidence insufficient to convict for any alleged offense that occurred on any date other than February 12 [and] 13, 1997." According to Defendant, no "additional evidence" was presented with respect to "any offense that occurred during the January 1997 through April 1997 period." Although the jury was instructed to consider each crime separately, Defendant argued, "there is no way to know whether the jury convicted [him] twice for the acts he was found to have committed on February 12 [and] 13, 1997."

On appeal, Defendant renews this argument by claiming that he was subjected to multiple punishments for the same offenses when separate sentences were imposed for the offenses described under Counts 11 through 14, and those offenses were based on the same conduct underlying the offenses under Counts 15 and 16. We generally apply a de novo standard of review to the constitutional question of whether there has

11

been a double jeopardy violation. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. However, where factual issues are intertwined with the double jeopardy analysis, the factual issues regarding whether Defendant's actions, which formed the basis of the charges, amounted to unitary conduct. Therefore, we apply a deferential substantial standard of review to the district court's decision to punish Defendant separately for each of the six counts contained in the jury's verdict. In cases such as this where a defendant claims to have been subjected to multiple punishments based on the same conduct, our Supreme Court has adopted a two-part test. *See Swafford v. State*, 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991). First, we must determine whether the conduct underlying the offenses is unitary in that it violates more than one statute. *Id.* Second, we must decide whether the legislature intended to create separately punishable offenses. *Id.* "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.* Unless there is proof that each act was "in some sense distinct" from other acts, we will assume that the legislature did not intend multiple punishments. *State v. Haskins*, 2008-NMCA-086, ¶ 17, 144 N.M. 287, 186 P.3d 916 (internal quotation marks and citation omitted), *cert. denied*, 2008-NMCERT-005, 144 N.M. 331, 187 P.3d 677. On the other hand, if the acts are distinct and not unitary, no double jeopardy violation occurred, and we

need not apply the second part of the test. *See Swafford*, 112 N.M. at 14, 810 P.2d at 1234.

In determining whether the offenses described in Counts 15 and 16 are distinct from those described in Counts 11 through 14, we consider various factors. For example, we consider whether the events were sufficiently separated by either time or space. *Id.* at 13-14, 810 P.2d at 1233-34. We look to the quality and nature of the acts and the objects involved, whether there was an intervening event, and we consider a defendant's behavior and utterances during or between the acts. *Id.*; *see State v. Barrera*, 2001-NMSC-014, ¶ 36, 130 N.M. 227, 22 P.3d 1177. We also consider whether the victim was moved or repositioned between acts, and whether there was serial penetration of different orifices or repeated penetrations of the same orifice. *See Herron v. State*, 111 N.M. 357, 361-62, 805 P.2d 624, 628-29 (1991).

In the indictment, Counts 11, 13, 15, and 16 describe acts of CSCM, and Counts 12 and 14 describe acts of CSPM. Count 11 states that Defendant caused A.R. to touch his penis between the dates of October 3, 1996, and April 2, 1997. Count 13 states that Defendant touched or applied force to A.R.'s breast between the dates of January 3, 1997, and April 2, 1997. Count 15 states that Defendant touched or applied force to A.R.'s buttocks, and Count 16 states that Defendant touched or applied force to A.R.'s vaginal area, both offenses occurring on or between the dates of February

13

12, 1997, and February 13, 1997. Count 12 states that Defendant inserted his finger into A.R.'s vagina, and Count 14 states that Defendant caused A.R. to engage in cunnilingus, both offenses occurring between the dates of January 3, 1997, and April 2, 1997.

As noted above, Defendant contends that, because the offenses described in Counts 11, 12, 13, and 14 occurred during a time period that included the dates on which the offenses described in Counts 15 and 16 occurred, it is not possible to determine whether the jury relied on the evidence presented in support of Counts 15 and 16 to support convictions under Counts 11 through 14. In addressing this argument, we first summarize the evidence presented in support of Counts 15 and 16. Counts 15 and 16, both for CSCM, occurred on or between February 12 and 13, 1997. Defendant conceded that evidence was presented that Kathy was in the hospital on those dates. A.R. testified that, when Kathy was in the hospital and A.R. was living at Defendant's home, Defendant took her to his bed, got on top of her and started rocking back and forth on her with his crotch area placed on her vaginal area. A.R. could feel that Defendant's penis was hard. Defendant then turned A.R. onto her stomach, got on top of her buttocks from behind, lifted her shirt, grabbed her breasts, and licked and kissed her back while rocking back and forth. Again, A.R. could feel that Defendant's penis was hard. According to A.R.'s testimony, Defendant touched

14

or applied force to her vaginal area and her buttocks, and used his hands to touch or apply force to her breasts.

As to the events occurring on February 12 and 13, 1997, A.R. never testified that Defendant caused her to touch his penis (Count 11), inserted his finger into her vagina (Count 12), or caused her to engage in cunnilingus (Count 14). A.R.'s testimony about those dates could only have been viewed to support claims that Defendant touched or applied force to A.R.'s buttocks (Count 15), vaginal area (Count 16), and breast (Count 13). As discussed below in this opinion, however, a review of the transcript reveals there was evidence, other than that concerning what transpired on February 12 and 13, that Defendant touched A.R.'s breast. In addition, there was evidence to separately support each charge described in Counts 11 through 14.

A.R. testified that the sexual abuse by Defendant occurred weekly for five years, from the time she was ten years old until she was sixteen. A.R. testified that during those five years, Defendant touched her breasts on a weekly basis with his hand; touched her breast with his mouth at least one time; and touched her vaginal area with his mouth, placed her hand onto his penis, and put his finger "on the inner part" of her vaginal area at least four times a month. With respect to the offenses that occurred on February 12 and 13, A.R. testified that Defendant touched her breasts with his hands, but did not testify that he touched her breasts with his mouth on those

dates. Therefore, based on the evidence presented at trial, the jury could reasonably find that Defendant touched A.R.'s breast with his hand on February 12 or 13, and touched A.R.'s breast with his mouth on a different date during the time period referred to in the indictment. In addition, based on A.R.'s testimony that different acts occurred at least four times per month and based on the fact that Counts 11, 12, and 14 each referred to different orifices and/or body parts, the jury could reasonably find support for Defendant's convictions for the offenses described in those counts.

Furthermore, to the extent that Defendant claims that the convictions under Counts 15 and 16 were based on unitary conduct, we disagree. The evidence presented at trial showed that Defendant committed two distinct acts of CSCM on the dates of February 12 and 13. First, he placed his crotch area onto A.R.'s vaginal area so that she could feel that his penis was hard against her body. Second, Defendant repositioned A.R. by placing her onto her stomach and lifting her shirt to touch her breasts. He lay on top of her buttock area and began rocking. While he was rocking, A.R. could feel his penis. The evidence established that Defendant committed one offense of CSCM involving A.R.'s vaginal area, repositioned A.R., and then committed a separate offense of CSCM involving A.R.'s buttocks. *See Herron*, 111 N.M. at 361-62, 805 P.2d at 628-29. We hold that the evidence supports a determination that the acts described in Counts 15 and 16 were separate and distinct

16

and not based on unitary conduct. We conclude that Defendant's double jeopardy rights were not violated.

**CONCLUSION**

Based on the discussion in this opinion, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
                    **LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**JONATHAN B. SUTIN, Judge**