This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

No. A-1-CA-35256

**BRETT C. CHOATE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CATRON COUNTY**
**Matthew G. Reynolds, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Gary C. Mitchell, P.C.
Gary C. Mitchell, Assistant Appellate Defender
Ruidoso, NM

for Appellant

## MEMORANDUM OPINION

**FRENCH, Judge.**

{1}    Defendant Brett Choate appeals his convictions for two counts of criminal sexual contact of a minor (CSCM) and one count of criminal sexual penetration of a minor (CSP). He argues that the district court erred when it (1) instructed the jury on the CSP charge because the jury instruction given did not contain the required element of physical force or physical violence; (2) ordered that the trial venue change from Catron County to Socorro County; (3) admitted statements Defendant made to an officer before the officer placed Defendant in his patrol car; and (4) denied Defendant's motion for a more definite statement. The State concedes that the jury was improperly instructed on the CSP charge in Count 2, and also notes that the judgment incorrectly identifies one of the CSCM convictions as a second-degree felony rather than a third-degree felony. We hold that Defendant was entitled to a jury instruction on CSP that fairly and accurately stated the applicable law and accordingly reverse Defendant's conviction for CSP charged in Count 2, and remand for retrial on the Count 2. We direct the district court to resentence Defendant and amend its judgment concerning the degree of the Count 3 CSCM conviction. Finding no error in Defendant's remaining contentions, we otherwise affirm Defendant's convictions for Counts 1 and 3.

**BACKGROUND**

{2} Defendant lived on a ranch near Pie Town, New Mexico, with his wife, Treva, his daughter (Child), and his two sons. Defendant legally adopted Child in May 2012, when she was twelve years old. Treva testified at trial as follows. On May 18, 2013, she found Defendant sitting on a bed with Child. When Defendant pulled his hand from under the blanket she saw that Child was not wearing underwear. Later, Defendant told Treva that he hoped she had not noticed anything as it had happened "just a couple of times." Treva also testified that on New Year's Eve 2011, she observed Defendant touching Child's intimate parts.

{3} Child testified that on May 18 Defendant put his fingers in her vagina. Child testified that Defendant would unbuckle her pants and put his finger in her vagina as she sat on his lap in his truck, and that similar incidents had occurred three to four times per week since 2011.

{4} Defendant was charged with a total of 144 counts of felonious sexual contact. However, after the district court ruled on Defendant's motion for directed verdict, only two counts of CSCM and one count CSP ultimately went to the jury. The jury returned a verdict of guilty on Count 1, criminal sexual contact (clothed) of a child under the age of thirteen; Count 2, criminal sexual penetration of a child at least thirteen but less than eighteen years of age by a parent; and Count 3, criminal sexual contact of a child under the age of thirteen.

3

# DISCUSSION

## Instructional Error

**{5}**     Defendant asserts, and the State concedes, that the jury was improperly instructed on the elements of CSP in the second degree under Count 2 because the element of "force or coercion" was omitted from the instruction. "Although the state concedes the issue, we are not bound to accept the state's concession." *State v. Palmer*, 1998-NMCA-052, ¶ 12, 125 N.M. 86, 957 P.2d 71. In this circumstance, we agree that the omission of the "force or coercion" element from the jury instruction requires us to vacate Defendant's conviction of second degree CSP and remand for retrial on this charge.

**{6}**     Count 2 charged Defendant with CSP in the second-degree, pursuant to NMSA 1978, Section 30-9-11(E)(1) (2009). CSP in the second-degree consists of all criminal sexual penetration perpetrated "*by the use of force or coercion* on a child thirteen to eighteen years of age." Section 30-9-11(E)(1) (emphasis added). The instruction to the jury, without objection from Defendant, set forth the essential elements of the offense as follows:

> 1.  [D]efendant caused the insertion to any extent of his finger into the vulva or vagina of Victim;
>
> 2. Victim was at least thirteen but less than eighteen years old;
>
> 3. [D]efendant was a parent of Victim;

4

4. This happened in Catron County, New Mexico, on or about May 18, 2013.

{7} The district court failed to include the required element that Defendant "used physical force or physical violence" or "used threats of physical force or physical violence[,]" and acknowledged at Defendant's initial sentencing hearing, that the erroneous instruction was a "clear violation of the UJI." UJI 14-956(A)(2) NMRA. The Use Note for UJI 14-956(A)(2) instructs that it is effective for all cases filed or pending on or after December 31, 2013 by Supreme Court Order No. 13-8300-023.

{8} At Defendant's initial sentencing hearing in October 2015 the district court acknowledged that the jury instruction for Count 2 was a "clear violation of the UJI." The district court instructed the parties to submit memoranda on the issue, and Defendant moved to dismiss Count 2 based on the improper jury instruction, or, alternatively, to set aside the guilty verdict. The State responded, arguing that "there are two legitimate interpretations of whether or not force or coercion is a necessary separate element when the person in the position of authority is a parent, or indeed whether or not parent (or other position of authority) is a necessary element for this crime. Thus, the issue is more appropriately raised before the appellate court, and [D]efendant's request to have Count 2 dismissed or the [g]uilty verdict set aside should be denied." At a hearing in November 2015 the district court again stated that it erred by allowing the jury instruction on Count 2, but it could not conclude whether

the error was fundamental. It entered Defendant's judgment and sentence on December 7, 2015.

**{9}** "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error. Under both standards we seek to determine whether a reasonable juror would have been confused or misdirected by the instruction." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (internal quotation marks and citations omitted). Because the issue was not preserved, we review Defendant's challenge to the jury instruction for fundamental error.

**{10}** Because the jury was not instructed that the State had the burden of proving beyond a reasonable doubt an essential element of the crime—that Defendant used force or coercion—the failure to so instruct constitutes fundamental error. *See State v. Samora*, 2016-NMSC-031, ¶¶ 27-29, 387 P.3d 230 (explaining that fundamental error occurs where the jury is not instructed on an essential element of the crime and there is no way to know if the jury found that element beyond a reasonable doubt); *see State v. Fierro*, 2014-NMCA-004, ¶ 36, 315 P.3d 319 (holding that when "[the d]efendant was charged with CSP in the second degree by the use of force or

coercion" the State had to prove "use of threats of physical force or violence" against Victim).

{11} Where a district court commits instructional error, retrial following appeal is not barred by double jeopardy if the evidence presented was sufficient to convict under the erroneous instruction. *State v. Dowling*, 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d 930 (noting that if "sufficient evidence was presented at trial to support a conviction [based on the instruction given], then retrial is not barred"). "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883. We review the sufficiency of the evidence from a highly deferential standpoint. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Here,

testimony by Mother and Child satisfy the jury's verdict beyond a reasonable doubt, and we therefore conclude that sufficient evidence supported Defendants conviction for Count 2 under the erroneous instruction. Accordingly, we reverse Defendant's conviction on Count 2 and remand for retrial on the conduct alleged regarding that charge.

**Change of Venue**

{12} Defendant argues that the district court abused its discretion by changing venue from Catron County to Socorro County because the crimes occurred in Catron County. Defendant did not object to the venue change and, in fact, agreed to it, thereby failing to preserve the issue for appellate review and waiving his right to contest it now. Rule 12-321, NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the [district] court was fairly invoked."); *State v. Shroyer*, 1945-NMSC-014, ¶ 17, 49 N.M. 196, 160 P.2d 444 (explaining that the defendant may waive the right to trial in the county in which the offense was committed by failing to object on venue grounds and by appearing and participating in the proceedings without raising the issue).

{13} In support of our conclusion, we note that in the district court's order declaring a mistrial and changing venue, the district court found that *both* parties agreed to change venue to Socorro County because a fair and impartial jury in Catron County

could not be selected and further attempts to select a jury would have been futile given the number of jurors that had already been excused for cause because of knowledge of the case and the parties. Additionally, at a motion hearing prior to ordering the venue change, the district court asked whether the parties objected to the change of venue, and both replied that they did not. At a pretrial conference in Socorro County after the venue change, Defendant's counsel told the district court that the parties agreed to Socorro County as the venue for trial, stated that he did not anticipate filing any other motions, and affirmed his readiness to proceed with the trial in Socorro County. The district court did not err in ordering the change of venue.

**Admission of Defendant's Statements**

{14}     "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). We review "factual matters with deference to the district court's findings if substantial evidence exists to support them, and [we] review[] the district court's application of the law de novo." *State v. Almanzar*, 2014-NMSC-001, ¶ 9, 316 P.3d 183. Defendant moved to suppress statements he made on the day of his arrest both before the arresting officer placed Defendant in his patrol car and after the officer placed Defendant in handcuffs and moved Defendant to the back of the patrol car. The district court denied Defendant's motion to suppress statements Defendant

made before the arresting officer placed Defendant in the patrol car. The district court concluded that Defendant made the statements spontaneously, not in response to interrogation, and because the circumstances did not require the officer to advise Defendant of his *Miranda* rights. On appeal, Defendant argues that the statements Defendant made before the officer put him in handcuffs and into the patrol vehicle should have been suppressed because a "reasonable person in [D]efendant's position would have believed that he was restrained to the degree associated with a formal arrest, and thus [D]efendant was in *Miranda* custody when he made [the] statement." We are not persuaded.

{15}     According to the testimony at the suppression hearing, Deputy Bugayong responded to a call from dispatch instructing him to go to Defendant's house because Defendant's wife called 911 and reported that she had caught Defendant molesting Child. When Deputy Bugayong arrived at the house, Defendant's wife stepped outside the house and said there was a gun inside on the washing machine. The deputy went inside, retrieved the gun, and walked back outside to secure it in his vehicle. Deputy Bugayong then asked Defendant's wife where he could find Defendant, and she pointed inside the house. Deputy Bugayong saw Defendant sitting in a back corner of the home.  Deputy Bugayong then entered the home. When he approached Defendant, the deputy said "Hello." Defendant stood up and said, "I am so sorry, Mike. I really

messed up," held his hands with his palms together in front of him, and then stated, "I am ready to go." Deputy Bugayong told Defendant that he came to secure the scene while they await the arrival of the state police, and asked Defendant to walk to his vehicle with him. While they walked out of the house and to the vehicle, Deputy Bugayong told Defendant multiple times not to make any statements and he did not ask Defendant any questions. Defendant continued saying he "really messed up" while they walked to the vehicle.

{16}     When they arrived at the vehicle, Deputy Bugayong told Defendant, "I'm going to put . . . handcuffs on you for your own safety," and Defendant then asked Deputy Bugayong to tell Defendant's son that he was sorry. Deputy Bugayong put Defendant in handcuffs and left him in the back of the patrol vehicle. At no point during this exchange did Deputy Bugayong recite Defendant his *Miranda* rights.

{17}     "Suppression of an accused's statements to a law enforcement officer prior to the giving of *Miranda* warnings is only required when the statements are the product of a custodial interrogation." *State v. Fekete*, 1995-NMSC-049, ¶ 41, 120 N.M. 290, 901 P.2d 708. "The relevant inquiry to determine whether an individual is in police custody is how a reasonable [person] in the suspect's position would have understood his situation." *Id.* (internal quotation marks and citation omitted); *State v. Wilson*, 2007-NMCA-111, ¶ 14, 142 N.M. 737, 169 P.3d 1184 ("In determining whether a

11

person is in *Miranda* custody . . . the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement to the degree associated with a formal arrest." (internal quotation marks and citation omitted)). "Interrogation occurs when an officer subjects an individual to questioning or circumstances which the officer knows or should know are reasonably likely to elicit incriminating responses." *State v. Cavanaugh,* 1993-NMCA-152, ¶ 5, 116 N.M. 826, 867 P.2d 1208.

{18}    Deputy Bugayong said only "Hello" before Defendant made the statements at issue. This does not constitute questioning. We conclude that Defendant was not in custody. Defendant made the statements while he was walking from inside his home to the officer's patrol car outside of his home. He was not handcuffed, he was not under arrest, and he was not yet in the officer's patrol vehicle when he spoke. *See State v. Swise*, 1983-NMSC-071, ¶ 4, 100 N.M. 256, 669 P.2d 732 (holding that the defendant was not in custody when officers came to the defendant's place of work, interviewed the defendant for about ten minutes, and at no time placed the defendant under arrest or held him in constraint); *State v. Bravo*, 2006-NMCA-019, ¶¶ 1-13, 139 N.M. 93, 128 P.3d 1070 (holding that the defendant was not in custody when officers responded to a 911 call and questioned the defendant in her home with family members present, nor was the defendant in custody when officers interviewed her at

the police station for two hours but did not place the defendant in handcuffs or arrest her); *cf. State v. Snell*, 2007-NMCA-113, ¶ 6, 142 N.M. 452, 166 P.3d 1106 (holding that the defendant was in custody when he was questioned in the back seat of a police car after officers threatened to arrest him and physically escorted him to the police car, placed him in the back seat, locked him inside, and returned later to question him).

{19} Additionally, the district court's decision to admit the statement is not erroneous because they were volunteered—they were "statements which the police did not attempt to elicit." *Fekete*, 1995-NMSC-049, ¶¶ 43-44 (explaining that volunteered statements that the police did not attempt to elicit lack the police misconduct that the suppression of such statements is intended to redress and therefore need not be suppressed). The record indicates, especially given that Deputy Bugayong told Defendant not to speak to him, that Defendant made the statements spontaneously and not in response to any questioning by or even conversation with the police.

{20} Thus, substantial evidence supported the district court's findings that Defendant was neither interrogated nor in custody when he made statements to Deputy Bugayong before being handcuffed and placed in the officer's vehicle, and we conclude that the district court properly denied Defendant's motion to dismiss.

{21} Finally, we note that we need not address Defendant's argument that he did not make the statement knowingly because his blood alcohol content was .23, and he was

13

therefore too intoxicated "to know what [Defendant] was doing." Defendant's argument seems to be based on the notion that he did not waive his *Miranda* rights because a waiver of *Miranda* rights must be made knowingly and intelligently. Because we have concluded that Defendant was not entitled to receive *Miranda* rights in the first place, we will not analyze whether intoxication prevents a person from knowingly waiving those rights after they have been administered.

**Motion for a More Definite Statement**

{22}    Defendant argues that the district court erred by denying Defendant's request for a more definite statement, contending that the information did not adequately specify the dates, times, and locations of his alleged conduct. To the extent Defendant's argument is based on the Due Process and Double Jeopardy Clauses and thus poses constitutional questions, we review the district court's denial of his motion for a more definite statement de novo. *See Los Chavez Cmty. Ass'n v. Valencia Cty.*, 2012-NMCA-044, ¶ 12, 277 P.3d 475 ("We review questions of constitutional law and constitutional rights, such as due process protections, de novo." (internal quotation marks and citation omitted)).

{23}    Under the Sixth and Fourteenth Amendments to the United States Constitution, "[f]ailure to charge [a] defendant with a specific act or specific acts violates his right to be informed of the charges against him and denies him due process of law." *State*

14

*v. Foster*, 1974-NMCA-150, ¶ 8, 87 N.M. 155, 530 P.2d 949; *see* U.S. Const. amends. VI, XIV. The Fifth Amendment to the United States Constitution and "[p]rocedural due process . . . requires that criminal charges provide criminal defendants with the ability to protect themselves from double jeopardy." *State v. Dominguez*, 2008-NMCA-029, ¶ 5, 143 N.M. 549, 178 P.3d 834 (internal quotation marks and citation omitted); *see* U.S. Const. amend. V.

{24}     Notwithstanding Defendant's untimely filing of his motion for a more definite statement, his argument on appeal amounts to little more than assertions of counsel that Defendant's rights were violated, and "[i]t is not our practice to rely on assertions of counsel unaccompanied by support in the record." *Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104. Defendant does not analyze or provide evidentiary support for his argument that he was denied notice of the charges because they lacked specificity, and he makes no double jeopardy argument aside from citation to the constitution. *See State v. Ervin*, 2002-NMCA-012, ¶ 6, 131 N.M. 640, 41 P.3d 908 (determining whether a charging period is overly broad requires the defendant to establish that the prosecution could reasonably have provided greater specificity of the alleged offenses, and that its failure to do so prejudiced the defendant). Moreover, though Defendant asserts that he was prejudiced by his inability to prove an alibi, he failed to prove, as required, that any prejudice suffered was "both actual, and not

based on pure conjecture, and substantial in its impact on the defense." *Id.*, ¶ 17. "[W]ithout prejudice, there is no reversible error," and prejudice only exists "when the defense loses its only means of proving its case." *Id.* ¶ 7.

**Count 2I Judgment and Sentencing**

{25} As the State pointed out, and Defendant concurs in his reply brief, Defendant was tried and convicted of CSCM of a child less than thirteen years of age, pursuant to NMSA 1978, Section 30-9-13(C)(1) (2003), a third-degree felony. The judgment reflects that the district court applied Section 30-9-13(B)(1), a second- degree felony, and at sentencing the district court erroneously considered and sentenced Defendant for the second-degree felony under Section 30-9-13(B)(1). We therefore affirm Defendant's conviction, pursuant to Section 30-9-13(C), a third-degree felony, reverse Defendant's conviction as to Section 30-9-13(B)(1), a second-degree felony, and remand Count 2I for appropriate sentencing and correction of the judgment.

**CONCLUSION**

{26} For the reasons set forth above, we reverse Defendant's conviction for CSP in Count 2 and remand for retrial, affirm Defendant's convictions for CSC in Counts I and III, and remand for sentencing in Count 2I and correction of the judgment.

{27} **IT IS SO ORDERED.**

                                               _____

                                              **STEPHEN G. FRENCH, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**MICHAEL E. VIGIL, Judge**