**Certiorari Denied, December 4, 2013, No. 34,384**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-004**

**Filing Date: October 2, 2013**

**Docket No. 31,023**

**STATE OF NEW MEXICO**,

      **Plaintiff-Appellee,**

**v.**

**ERIC FIERRO,**

      **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**George P. Eichwald, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Acting Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**HANISEE, Judge.**

**{1}** Defendant appeals his convictions for criminal sexual penetration (CSP) in the second degree, which resulted in Victim's pregnancy. Defendant contends that he was denied his right to a speedy trial, the pretrial delay denied him due process, the district court lacked jurisdiction, the indictment should have been quashed, and there was insufficient

evidence to support his conviction. We affirm on all grounds.

## I.    BACKGROUND

**{2}**    Between October 1, 1999, and November 30, 1999, Defendant impregnated his fourteen-year-old stepdaughter (Victim) when she was in the eighth grade. This occurred while she and her family were living in Rio Rancho with Defendant. Defendant perpetrated the sexual intercourse by threatening Victim that he would kill her and her family and by misuse of his status as an authority figure. Victim gave birth to the child that resulted from the CSP in July 2000. Forensic DNA evidence indicated that there was at least a 99.9 percent likelihood that Defendant fathered Victim's daughter.

**{3}**    On June 24, 2004, Defendant was arrested for committing various sexual acts against Victim, including the CSP charge that resulted in her pregnancy and is at issue in this case. He was indicted on that same charge on July 8, 2004 in Bernalillo County. On June 7, 2007, Defendant for the first time brought a motion to dismiss for improper venue, arguing that the CSP that resulted in Victim's pregnancy took place in Sandoval County. The State agreed and, in response, sought that only that charge be dismissed without prejudice so that it could be refiled in Sandoval County. The Bernalillo County District Court granted Defendant's and the State's requests, dismissing the charge without prejudice. Of the charged offenses remaining in Bernalillo County, Defendant was convicted of eight counts of first degree CSP, sixteen counts of second degree CSP, four counts of third degree criminal sexual contact (CSC), and two counts of bribery of a witness on January 7, 2009. We note that Defendant also appealed those convictions on speedy trial grounds, and we concluded that his rights were not violated since the reasons for the delay were mostly attributable to Defendant, and Defendant failed to demonstrate that he suffered any type of significant or individualized prejudice from the delay. *State v. Fierro*, 2012-NMCA-054, ¶ 61, 278 P.3d 541, *cert. denied*, 2012-NMCERT-004, 293 P.3d 886.

**{4}**    On December 4, 2008, Defendant was indicted in Sandoval County for six counts of CSP against Victim. Count one of the indictment charged Defendant with CSP resulting in Victim's pregnancy. The district court subsequently dismissed the other five counts, which also alleged sexual misconduct against a minor, because they were duplicative of the Bernalillo County charges for which Defendant had been convicted. As to the count that related to the CSP resulting in Victim's pregnancy, the district court concluded that it was properly charged in Sandoval County. Following Defendant's waiver of trial by jury, Defendant's bench trial commenced on November 30, 2010.

**{5}**    Defendant was represented by counsel prior to and during trial, but nonetheless filed numerous pro se motions that the district court entertained at intervals throughout the proceeding. In multiple such motions brought by both his counsel and himself, Defendant argued that his right to a speedy trial had been violated. The district court rejected Defendant's speedy trial argument on the grounds that he had not shown prejudice, and subsequently convicted Defendant of CSP in the second degree. Defendant now appeals.

## II.    DISCUSSION

### A.    Defendant's Right to Speedy Trial Was Not Violated

**{6}**    Defendant first renews his contention that his right to a speedy trial was violated. "[T]he initial inquiry in speedy trial analysis is a determination as to whether the length of pretrial delay is presumptively prejudicial. A presumptively prejudicial length of delay is simply a triggering mechanism, requiring further inquiry into the [four] *Barker* factors." *State v. Montoya*, 2011-NMCA-074, ¶ 10, 150 N.M. 415, 259 P.3d 820 (alteration, internal quotation marks, and citation omitted). If the delay is presumptively prejudicial, we balance these four factors to determine whether a speedy trial violation has occurred. The factors to be considered are "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant." *State v. Plouse*, 2003-NMCA-048, ¶ 34, 133 N.M. 495, 64 P.3d 522. "We are mindful of the fact that [a] speedy trial analysis is not mechanical and must take into account all . . . relevant circumstances." *State v. Stock*, 2006-NMCA-140, ¶ 45, 140 N.M. 676, 147 P.3d 885 (internal quotation marks and citation omitted). "In considering each of these factors, we defer to the [district] court's factual findings[,] but review de novo the question of whether [the d]efendant's constitutional right [to a speedy trial] was violated." *State v. Brown*, 2003-NMCA-110, ¶ 11, 134 N.M. 356, 76 P.3d 1113.

**{7}**    In this case, Defendant was brought to trial on November 30, 2010. Defendant argues that the delay amounted to six years because his right to a speedy trial attached when he was arrested on the Bernalillo County charges on June 24, 2004. The State responds that Defendant's right to a speedy trial attached on December 4, 2008, when the indictment in Sandoval County was filed, and that the delay thus persisted for approximately twenty-three months. Regardless of the starting point, the delay was presumptively prejudicial because its length exceeded the limits for even a complex case. *See State v. Garza*, 2009-NMSC-038, ¶¶ 47-48, 146 N.M. 499, 212 P.3d 387 (holding that twelve months is presumptively prejudicial for simple cases, fifteen months is presumptively prejudicial for intermediate cases, and eighteen months is presumptively prejudicial for complex cases). As such, we must balance the four *Barker* factors, including the length of delay, to determine whether Defendant's speedy trial right was violated.

### 1.    Length of Delay

**{8}**    "Considering the length of delay as one of the four *Barker* factors, the greater the delay the more heavily it will potentially weigh against the State." *Garza*, 2009-NMSC-038, ¶ 24. In determining the length of delay, the interval at which Defendant's speedy trial right attached is the decisive starting point. "The speedy trial right attaches when the defendant becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." *State v. Parrish*, 2011-NMCA-033, ¶ 20, 149 N.M. 506, 252 P.3d 730 (internal quotation marks and citation omitted). In making this calculation, we take heed that "[t]he speedy trial guarantee is to prevent lengthy incarceration prior to trial, to reduce

impaired liberty while an accused is released on bail, and to shorten the disruption of life caused by pending and unresolved criminal charges." *State v. McCrary*, 1984-NMSC-005, ¶ 22, 100 N.M. 671, 675 P.2d 120. As such, "once charges are dropped in good faith, the delay is not scrutinized by the speedy trial clause of the Sixth Amendment of the federal constitution." *Id.*

**{9}** In this case, Defendant was arrested on June 24, 2004, for impregnating Victim. On July 8, 2004, he was indicted on that charge in Bernalillo County. Nearly three years later, on June 7, 2007, Defendant brought a motion to dismiss for improper venue, successfully asserting that the CSP that resulted in Victim's pregnancy took place in Sandoval County. Upon the State's agreement, the Bernalillo County district court promptly dismissed that charge. On December 4, 2008, Defendant was indicted in Sandoval County for the CSP which resulted in Victim's pregnancy. On November 30, 2010, Defendant's trial on the merits for that CSP commenced.

**{10}** Defendant argued below and reasserts on appeal that because he was arrested in June 2004 on charges for molesting and impregnating Victim, the lengthy delay before his November 2010 trial required the court to determine that his right to a speedy trial was violated. Defendant contends that the period of time between the initial arrest in Bernalillo County and his indictment in Sandoval County should be calculated within the speedy trial analysis. For support, Defendant cites cases that have concluded that the time between indictments is counted against the government where the government dismissed the charge and refiled it in another jurisdiction to gain a tactical advantage. *See United States v. Lara*, 520 F.2d 460, 465 (D.C. Cir. 1975) (holding that long and unnecessary delays caused by the deliberate act of government forum-shopping for a tactical advantage showed bad faith and, as such, the interim between the first indictment and the second counted under speedy trial analysis); *United States v. Avalos*, 541 F.2d 1100, 1108-09 (5th Cir. 1976) (ruling that the four-month tactical delay between the government's dismissal of arrest warrants and its subsequent indictment before a different trial court would be counted in speedy trial analysis); *United States v. Thomas*, 527 F. Supp. 261, 262-63 (D.C. 1981) (holding that the period following the formal dismissal of charges before they were refiled counted for purposes of speedy trial analysis where the dismissal was attributable to government forum-shopping). Yet, Defendant does not argue here that the State acted in bad faith or with motivation to gain a tactical advantage, as the government did in those cases. Unlike those cases, Defendant himself sought the initial dismissal on the grounds of improper venue. Unlike those cases, the State does not appear to have dismissed and refiled the charges in order to benefit from the lapse in time or any change of venue.

**{11}** Defendant also likens his case to *State v. Talamante*, 2003-NMCA-135, 134 N.M. 539, 80 P.3d 476. In *Talamante*, the State initially indicted the defendant on March 25, 1999, and then dismissed the case without prejudice on May 5, 2000. *Id.* ¶¶ 4-5. That same day, a second indictment was returned, charging the defendant with the same offenses in the same court. *Id.* ¶ 5. "On October 23, 2001, [the d]efendant conditionally pleaded no contest to reduced charges, reserving his right to appeal the denial of his motion to dismiss the

indictment on speedy trial grounds." *Id*. ¶ 7. There, we analyzed that "[d]uring this continuous period of time, a formal indictment was pending against [the defendant]. The fact that the first indictment was dismissed is of no consequence because the second indictment was returned on the same day charging the identical offenses set forth in the first indictment." *Id.* ¶ 8. We concluded that "the charges against [the d]efendant were never dismissed or discharged in any real sense, thus his speedy trial rights continued to apply." *Id*. We also noted that

> numerous factors support[ed] the conclusion that both the [s]tate and the [district] court treated the two indictments as the same case: (1) the first indictment was dismissed, and the second indictment was returned on the same day with the conditions of release on the first indictment intact; . . . (3) both indictments were assigned to the same judge; (4) the same prosecutor handled both indictments; (5) orders filed under the first indictment to interview witnesses were deemed applicable to the second indictment; (6) the prosecutor treated both indictments as a single case for purposes of Rule 5-604. . .; (7) the first Rule 5-604 petition filed by the [s]tate in the Supreme Court after the second indictment recites the extensions and deadlines obtained under the first indictment as the deadline to commence trial; (8) the Rule 5-604 petitions filed in the Supreme Court by the [s]tate after the second indictment are all filed under the case numbers of both indictments; and (9) the clerk of the [district] court filed all the Rule 5-604 pleadings under the case numbers of both indictments.

*Id*. ¶ 9.

**{12}**     In contrast to *Talamante*, the present case commenced after a significant lapse in time following the initial indictment and dismissal. The charge related to Victim's pregnancy was dismissed on Defendant's motion. Had Defendant not been incarcerated as a result of his Bernalillo County trial, he presumably would have been released without restraints on his freedom as no charges had yet been brought in Sandoval County. *See State v. Ross*, 1999-NMCA-134, ¶ 15, 128 N.M. 222, 991 P.2d 507 ("[U]ntil the State files an information or indictment, the district court is without jurisdiction to try the defendant."). Unlike *Talamante*, the case numbers, judges, defense attorneys, and prosecutors all differed between the Bernalillo County case and the Sandoval County case. And significantly, the Sandoval County district court did not assume the Bernalillo County district court's evidentiary rulings would apply to the case before it. In fact, the court notified Defendant that he would need to seek exclusion of evidence anew and seek an evidentiary hearing if he again wished to exclude his confession despite the Bernalillo County district court's prior suppression of it. Therefore, the collective facts attendant to the dismissal of the Bernalillo indictment and the filing of the Sandoval indictment are of significant consequence, and we accordingly treat the two matters as separate cases.

**{13}**     Because we see no evidence that the State acted in bad faith by dismissing the charge

and subsequently refiling it in a proper venue, we conclude that the delay should be measured from the date Defendant was indicted in this case. As such, the delay amounts to twenty-three months. We conclude that this period of time weighs in Defendant's favor, although not heavily. *See Garza*, 2009-NMSC-038, ¶ 24 (citing *United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003) for the proposition that a three-year and nine-month delay was too short to weigh heavily in the defendant's favor).

## 2.     The Reasons for Delay

**{14}**     "The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *State v. Maddox*, 2008-NMSC-062, ¶ 13, 145 N.M. 242, 195 P.3d 1254. "[A] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). Defendant "is more likely to prevail if [he can] show that the [g]overnment had intentionally held back in its prosecution of him to gain some impermissible advantage at trial." *Id*. (internal quotation marks and citation omitted). Next, "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id*. ¶ 26 (alteration in original) (internal quotation marks and citation omitted). The weight we assign for negligent delay is dependent on the length of delay. "[O]ur toleration of such negligence varies inversely with its protractedness, and its consequent threat to the fairness of the accused's trial." *Id*. (alteration in original) (internal quotation marks and citation omitted). Lastly, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id*. ¶ 27 (internal quotation marks and citation omitted).

**{15}**     Defendant contends that "[b]ecause the lion's share of the delay in this case occurred while the Sandoval County charge was lodged in the Bernalillo County court, . . . the enormous length of time the case was pending in Albuquerque was the fault of the State." Defendant asserts that we wrongly decided his appeal in the Bernalillo County case by holding that his right to a speedy trial was not violated based on our conclusion that the delay was mostly attributable to Defendant, and Defendant failed to demonstrate that he suffered any type of significant or individualized prejudice. *Fierro*, 2012-NMCA-054, ¶ 61.

**{16}**     First and foremost, upon our Supreme Court's denial of certiorari, our decision in the Bernalillo County case became final. *See Fierro*, 2012-NMCERT-004. Separately, in this case, we have concluded that the delay is measured from the date of the Sandoval County indictment until the date Defendant was brought to trial. Defendant makes no arguments with regard to that time period.

**{17}**     Nonetheless, in our review of the Sandoval County district court record, Defendant appears to have caused a great deal of the delay in a manner that is unattributable to the State.  While being simultaneously represented by counsel in that district court, Defendant

6

filed numerous pro se motions that the district court entertained at intervals throughout the proceeding. On December 4, 2009, the district court compiled a list of fifteen motions brought by Defendant beginning in February 2009. Of those, thirteen were filed pro se by Defendant himself. Even after December 4, 2009, Defendant filed numerous additional motions, including a motion to dismiss for lack of jurisdiction; a motion to dismiss for speedy trial and due process; a motion to dismiss for failure to observe the rules; five motions seeking hearings; a motion for pre-summary judgment; an objection to the court's extension of time and motion to reconsider; a motion to dismiss; an addendum to his motion to dismiss for speedy trial and due process; and a motion to show cause. Defendant's motions were repetitive and confusing and caused significant delays to the progression of his case to trial. We note that the first and third of the State's requests for extensions of time were based on the fact that there were pending motions before the court that had to be resolved before trial commenced.

**{18}**    We therefore conclude that the delay in this case was not the product of intentional dilatory tactics by the State. Rather, it occurred in large part due to Defendant's own pro se trial tactic of bombarding the court with frequent and redundant motion practice. Therefore, this factor does not weigh in Defendant's favor.

### 3.    Defendant's Assertion of the Right

**{19}**    "Generally, we assess the timing of the defendant's assertion and the manner in which the right was asserted. Thus, we accord weight to the 'frequency and force' of the defendant's objections to the delay. We also analyze the defendant's actions with regard to the delay." *Garza*, 2009-NMSC-038, ¶ 32 (citations omitted) (explaining that the force of the defendant's assertions of his speedy trial right was diminished where he filed numerous motions which would inevitably slow down the proceedings).

**{20}**    The State concedes that Defendant timely and frequently asserted his right to a speedy trial. Nonetheless, his assertion of this right was coupled with the filing of numerous motions (listed above) which served to slow the proceedings in the district court. *See State v. Coffin*, 1999-NMSC-038, ¶ 67, 128 N.M. 192, 991 P.2d 477 (concluding that the defendant's assertion of his speedy trial right did not weigh in his favor where he simultaneously represented that he was not prepared for trial); *United States v. Loud Hawk*, 474 U.S. 302, 314-15 (1986) (according little weight to the defendants' repeated motions to dismiss on speedy trial grounds when the defendants simultaneously "filled the [d]istrict [c]ourt's docket with repetitive and unsuccessful motions"). It is inconsistent for Defendant to object to continuances and to assert his speedy trial rights, while concurrently inundating the district court with motions and requests for pretrial hearings. Based on the foregoing, the assertion of his speedy trial right weighs only slightly in Defendant's favor.

### 4.    Prejudice to Defendant

**{21}**    In *Garza*, our Supreme Court held that with regard to the *Barker* factors, "a

defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect." *Garza*, 2009-NMSC-038, ¶ 39. "The United States Supreme Court has identified three interests under which we analyze prejudice to the defendant: ([1]) to prevent oppressive pretrial incarceration; ([2]) to minimize anxiety and concern of the accused; and ([3]) to limit the possibility that the defense will be impaired." *Id.* ¶ 35 (internal quotation marks and citation omitted). With regard to the oppressive pretrial incarceration and the anxiety and concern of the accused, "[s]ome degree of oppression and anxiety is inherent for ever[y] defendant who is jailed while awaiting trial." *Id.* (alterations in original) (internal quotation marks and citation omitted). Therefore, we only weigh this factor in the defendant's favor when the oppressiveness and anxiety suffered is undue. *Id*. Furthermore, "[t]he oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration." *Id*.

**{22}**     Defendant has the burden to demonstrate and substantiate prejudice. *Id.* ¶¶ 35-37. In the present case, Defendant asserts that he had been "incarcerated since 2004, mostly in solitary confinement, causing him to require medication for anxiety and depression, and that a defense witness, who would have testified that [Victim]'s mother had confessed to him that she had fabricated the charges [of long-term abuse,] had died while the case was pending."

**{23}**     After reviewing the record, we conclude that Defendant did not suffer any pretrial incarceration in this, the Sandoval County case. Defendant had been in custody since 2004 based upon the Bernalillo County charges and continued to serve time in jail until he was convicted and imprisoned on those charges in 2009. Because Defendant was already in custody in what we have concluded to be a separate matter, his pretrial incarceration did not derive from the case that is the subject of this appeal.

**{24}**     Furthermore, Defendant failed to present any evidence that he suffered an unusual degree of anxiety and concern as a result of the pending charges in Sandoval County. Defendant solely made an assertion of prejudice through counsel and mere assertions are insufficient to prove this factor. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 (stating that "[a]n assertion of prejudice is not a showing of prejudice").

**{25}**     To the extent that Defendant claims his ability to present a defense was inhibited by the death of one of his witnesses, Defendant has failed to produce evidence to this effect. Defendant claims in the present case, as he did in the Bernalillo County case, that his witness, Aaron Chavez, died before he went to trial. *See Fierro*, 2012-NMCA-054, ¶¶ 59-60. Defendant provided no other evidence about this witness's potential testimony. As such, we conclude that Defendant failed to make a particularized showing of prejudice that resulted from the asserted loss of this witness. *See Coffin*, 1999-NMSC-038, ¶ 71 (concluding that to prove prejudice resulting from the unavailability of a witness, the defendant must show that the witness's testimony would have benefitted his case).

**{26}**     We note that a defendant is not required to make a particularized showing of

prejudice where the other *Barker* factors weigh heavily in his favor. *Garza*, 2009-NMSC-038, ¶ 39 (stating that "if the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated"). However, in the instant case, neither the length of delay nor the reasons for it weigh heavily in Defendant's favor, and Defendant himself has contributed to the delay. Pursuant to the *Barker* factors discussed above, we conclude that Defendant's speedy trial right was not violated.

## B.      The Pre-indictment Delay Did Not Violate Defendant's Right to Due Process

**{27}**      Defendant asserts that he was subject to unconstitutionally long pre-indictment delay. "[T]he United States Supreme Court has held that the due process clause of the fifth amendment provides additional, albeit limited, protection against improper preaccusation delay." *Gonzales v. State*, 1991-NMSC-015, ¶ 4, 111 N.M. 363, 805 P.2d 630. To establish whether a defendant has been denied procedural due process by pre-indictment delay, we utilize a two-part test. "First, the defendant must show prejudice to his or her defense as a result of the delay and, second, the defendant must show that the state intentionally caused the delay in order to gain a tactical advantage." *State v. Palmer*, 1998-NMCA-052, ¶ 4, 125 N.M. 86, 957 P.2d 71. "In determining whether a pre[-]indictment delay denied [the d]efendant his right of procedural due process, we conduct an independent review of the record and the law." *Id.* (internal quotation marks and citation omitted).

**{28}**      On appeal, Defendant solely argues that "the State's lack of diligence in getting the case before a Sandoval County grand jury demonstrates an unacceptable indifference by the prosecution to its constitutional duty to make a diligent, good-faith effort to bring [D]efendant to trial." On appeal, Defendant provides no evidence or even an argument about how he was prejudiced by the pre-indictment delay. Below, Defendant merely asserted that he suffered anxiety and concern over his case, that his defense had been impaired by the passage of time due to the faded memories of his witnesses, and that he had spent a significant amount of time in jail. Yet, mere assertions are insufficient in this context. Defendant "must establish prejudice by more than mere conjecture: vague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient . . . ; [D]efendant must be able to show definite and not speculative prejudice, and in what specific manner missing witnesses would have aided his defense." *Gonzales*, 1991-NMSC-015, ¶ 8 (omission in original) (internal quotation marks and citation omitted). The prejudice must be more than nominal: it does not have to "rise to the level of severe prejudice, but must establish that the prejudice impacted the defense." *Id.*

**{29}**      Defendant provided no proof or concrete explanations of how this delay impacted his defense. Additionally, Defendant failed to produce any evidence that the State intentionally delayed the indictment in order to gain a tactical advantage. As there is no evidence to support either element of the due process test, we conclude Defendant's right to due process was not impaired by the pre-indictment delay.

**C.    The Sandoval County District Court Had Jurisdiction to Hear This Case**

**{30}**    Pursuant to *State v. Franklin*, 1967-NMSC-151, ¶ 9, 78 N.M. 127, 428 P.2d 982, and *State v. Boyer*, 1985-NMCA-029, ¶ 24, 103 N.M. 655, 712 P.2d 1, Defendant argues that the Sandoval County District Court lacked jurisdiction to hear his case. Defendant argues that "the State's decision to arrest him, charge him, and hold him in Albuquerque for several years on the allegation that he impregnated [Victim] required the State to follow through in that county, or else lose jurisdiction." We disagree.

**{31}**    "[J]urisdiction is satisfied if the trier of fact can infer from the evidence that the crime occurred in New Mexico." *State v. Litteral*, 1990-NMSC-059, ¶ 19, 110 N.M. 138, 793 P.2d 268. "One of the essential elements incumbent upon the [s]tate was to establish where the offense occurred, because the law is that a crime must be prosecuted in the jurisdiction where it was committed." *State v. Losolla*, 1972-NMCA-085, ¶ 4, 84 N.M. 151, 500 P.2d 436. Here, Victim testified that the CSP took place while she was living with Defendant at an address on 12th Street in Rio Rancho within Sandoval County. A detective from the Sandoval County Sheriff's Office also testified that Victim was living in Rio Rancho at a home in Defendant's name and attended school in Rio Rancho at the time that the CSP in question occurred. Defendant's father also testified that Defendant's home at the time of the offense was located in Sandoval County. We conclude that the State presented sufficient evidence for the jury to infer that Defendant impregnated Victim in Sandoval County, New Mexico. As such, jurisdiction is satisfied.

**{32}**    Moreover, Defendant moved to dismiss this particular charge in Bernalillo County District Court on the ground that venue was improper. Defendant cannot now complain that this charge should have been tried in Bernalillo County. We thus affirm the district court's jurisdiction.

**D.    The District Court Properly Denied Defendant's Motion to Quash the Indictment**

**{33}**    Pursuant to *Franklin*, 1967-NMSC-151, ¶ 9, and *Boyer*, 1985-NMCA-029, ¶ 24, Defendant argues that the State impermissibly used evidence that was previously suppressed in Bernalillo County district court to obtain the indictment against Defendant in the Sandoval County case at issue here. Defendant contends that the district court should have quashed the indictment as a result of the improper evidence.

>    Defendant's argument is unavailing. This Court has reiterated in the past that the findings of [the] grand jury, when made by and through an indictment, duly returned into court, and regular upon its face, are, with respect to the kind and degree of evidence upon which it was returned, conclusive, and that the courts are without power or jurisdiction to inquire into the subject and review the testimony submitted to the grand jury to determine whether or not the required kind or degree of evidence was

10

submitted.

*State v. Stevens*, 1979-NMCA-058, ¶ 3, 93 N.M. 434, 601 P.2d 67 (internal quotation marks and citation omitted). As such, "[w]hen inadmissible evidence is presented to the grand jury, the proper remedy is suppression at trial." *State v. Eder*, 1985-NMCA-076, ¶ 9, 103 N.M. 211, 704 P.2d 465. This is because "the barring of prosecution altogether in such a circumstance, might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book." *Id.* (internal quotation marks and citation omitted).

**{34}** In this case, the State provided the grand jury with evidence of Defendant's confession, which was obtained during a custodial interrogation without *Miranda* warnings. The district court stated below that Defendant's remedy would be suppression of the confession at trial if it determined that the evidence was inadmissible. The district court did in fact subsequently suppress the confession at issue here. Thus, we conclude that quashing the indictment was unnecessary. Defendant obtained the constitutionally proper relief warranted by the situation, and no further action was required by the district court.

**E.      Defendant's Conviction is Supported by Sufficient Evidence**

**{35}** Lastly, also pursuant to *Franklin*, 1967-NMSC-151, ¶ 9, and *Boyer*, 1985-NMCA-029, ¶ 24, Defendant asserts that there is insufficient evidence to support his conviction. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Riley*, 2010-NMSC-005, ¶ 12, 147 N.M. 557, 226 P.3d 656 (internal quotation marks and citation omitted), *overruled on other grounds by State v. Montoya*, 2013-NMSC-020, ¶ 54, 306 P.3d 426. We view the evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "Because an appellate tribunal does not enjoy the same exposure to the evidence and witnesses as the jury at trial, our review for sufficiency of the evidence is deferential to the jury's findings." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057.

**{36}** Here, Defendant was charged with CSP in the second degree by the use of force or coercion resulting in personal injury, pursuant to NMSA 1978, § 30-9-11 (D)(3) (2003, amended 2009). To convict Defendant of this charge, the State had to prove that Defendant caused Victim to engage in sexual intercourse with him through the use of threats of physical force or violence against her or her family and that Defendant's acts resulted in Victim's pregnancy. *See* UJI 14-947 NMRA. In the alternative, Defendant was charged with second degree CSP on a child thirteen to sixteen years of age when the perpetrator is in a position of authority over the child and uses this authority to coerce the child to submit to sexual abuse, pursuant to Section 30-9-11(D)(1). To convict Defendant of the alternative, the State had to prove that when Victim was fourteen years old, Defendant, as her stepfather,

11

exercised undue influence over Victim to coerce her to submit to sexual intercourse with him. *See* UJI 14-945 NMRA. The State had to prove that the events constituting both CSP violations occurred in Sandoval County, New Mexico sometime between October 1, 1999 and November 30, 1999.

**{37}** At trial, the State presented testimony from Victim and a forensic DNA analyst demonstrating that the elements of either of these alternative crimes had been satisfied. Victim testified that Defendant, her stepfather, impregnated her when she was fourteen years old and in eighth grade, while she and her family were living in Rio Rancho with Defendant. Victim also testified that she felt compelled to have sex with Defendant because he was an authoritative figure and that the sex was not consensual. Victim stated that Defendant told her that if she reported the sexual intercourse he had with her to anyone, he would kill Victim, her mother, her brothers, and himself. Victim indicated that Defendant had been making this threat to her since she was a little girl. Victim explained that she believed Defendant's threats because Defendant "always used to hurt us." Victim further stated that she carried the child that resulted from the CSP to full term and gave birth to her in July 2000.

**{38}** In addition, a forensic DNA analyst testified that she obtained DNA samples from Defendant, Victim, and Victim's child. The analyst testified that upon her analysis of the samples, she was able to conclude that there was at least a 99.9 percent chance that Defendant fathered Victim's daughter.

**{39}** This evidence shows that Defendant threatened to kill Victim and her family in order to facilitate his plan to have sexual intercourse with Victim. The DNA tests demonstrate that the resulting child is Defendant's offspring to a near certain probability. Moreover, the testimony also indicates that, as Victim's stepfather, Defendant was in a position of power and authority over Victim and he used this authority to coerce Victim to have sexual intercourse with him when she was only fourteen years old. Viewing the evidence in the light most favorable to the verdict, we thus conclude that this evidence is sufficient to prove either CSP in the second degree (1) by the use of force or coercion resulting in personal injury under Section 30-9-11(D)(3), or (2) by coercion of a child thirteen to sixteen years of age, pursuant to Section 30-9-11(D)(1).

**{40}** Defendant opines that the evidence was presented after a long delay and that some of the State's testimony was not credible because he presented conflicting evidence. We emphasize that the finder of fact, not an appellate court, must reconcile any conflicts in the evidence and determine where truth and credibility lies. The fact finder can choose to believe the State's testimony and disbelieve Defendant's version of events. *State v. Cabezuela*, 2011-NMSC-041, ¶ 45, 150 N.M. 654, 265 P.3d 705. As there is sufficient evidence to prove each of the alternative charging methods for second degree CSP, we affirm Defendant's conviction.

## IV.   CONCLUSION

12

**{41}** For the reasons stated above, we affirm Defendant's conviction on all grounds.

**{42}** **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for _State v. Fierro_, No. 31,023**

**APPEAL AND ERROR**
Standard of Review
Substantial or Sufficient Evidence

**CONSTITUTIONAL LAW**
Due Process
Miranda Warning
Speedy Trial

**CRIMINAL LAW**
Criminal Sexual Penetration

**CRIMINAL PROCEDURE**
Change of Venue
Indictment
Motion to Suppress
Prejudice
Quashing of Indictment
Right to Speedy Trial
speedy trial

**EVIDENCE**
Substantial or Sufficient Evidence