# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2020-NMCA-003

Filing Date: October 1, 2019

No. A-1-CA-36177

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

JOSEPH A. GRUBB,

      Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY
Jerry H. Ritter Jr., District Judge

Released for Publication January 21, 2020.

Hector H. Balderas, Attorney General
Santa Fe, NM
Lauren J. Wolongevicz, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Aja Oishi, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**M. ZAMORA, Chief Judge.**

**{1}**    Defendant Joseph Grubb appeals his conviction for escape from jail, arguing that the district court committed fundamental error by instructing the jury using the Uniform Jury Instruction (UJI) that lists the essential elements for the crime of escape from an inmate-release program. Defendant also argues that the evidence was insufficient to support his conviction and that pre-indictment delay violated his due process rights. Because the district court instructed the jury on a crime for which Defendant was never

charged, the district court committed fundamental error. Because Defendant's other arguments are without merit, we reverse for a new trial consistent with this opinion.

**BACKGROUND**

**{2}** While on probation for a conviction in 2008, Defendant was arrested and charged with drug-related crimes. As a result of those charges, the State sought to revoke Defendant's probation, and after holding a hearing on the matter on December 22, 2011, the district court revoked Defendant's probation, granting him furlough until December 31, 2011, when he was required to turn himself in to the custody of the Otero County Detention Center. Defendant did not report on December 31, 2011, and instead accumulated additional charges in two new cases under an alias, Deciderio Nieto. While he remained in jail on those other charges, Defendant was indicted on one count of escape from jail, and a jury convicted him. Defendant appeals his conviction for escape from jail.

**DISCUSSION**

**{3}** Defendant argues that the district court erred by improperly instructing the jury, that the evidence was insufficient as a matter of law to support a conviction for escape from jail under NMSA 1978, Section 30-22-8 (1963), that the district court improperly admitted testimony regarding other cases, and that the pre-indictment delay in this case violated his due process rights. We begin with Defendant's arguments regarding jury instructions and sufficiency of the evidence. Those arguments being dispositive of the improper testimony argument, we need not address it. *See State v. Mascareñas*, 2000-NMSC-017, ¶ 1, 129 N.M. 230, 4 P.3d 1221 (declining to address appellant's arguments regarding improperly admitted evidence after concluding deficiencies in the jury instructions warranted reversal). Last, we consider Defendant's argument regarding pre-indictment delay.

**I.      Jury Instructions**

**A.      Escape From Jail and Escape From an Inmate-Release Program**

**{4}** Defendant argues that the district court committed fundamental error by instructing the jury using the UJI for escape from an inmate-release program rather than escape from jail. "Escape from jail consists of any person who shall have been lawfully committed to any jail, escaping or attempting to escape from such jail." Section 30-22-8. The UJI identifies the three essential elements present in Section 30-22-8 as follows:

1.      The defendant was committed to jail;

2.      The defendant either escaped from, or attempted to escape from[,] jail; and

3.      This happened in New Mexico on or about [a specified date].

UJI 14-2221 NMRA. The UJI also provides, in a use note, that "[i]f the escape is from a jail release program, use UJI 14-2228[ NMRA,]" which lists the six essential elements for escape from an inmate-release program. UJI 14-2221 use note 1.

**{5}**     Escape from an inmate-release program is a crime established in NMSA 1978, Section 33-2-46 (1980): "Any prisoner whose limits of confinement have been extended, or who have been granted a visitation privilege under the inmate-release program, who willfully fails to return to the designated place of confinement within the time prescribed, with the intent not to return, is guilty of an escape." Under the UJI, escape from an inmate-release program consists of six elements:

> [a.]     The defendant was committed to _____ (identify institution);
>
> [b.]     The defendant was released from _____ (identify institution) to (describe purpose for release);
>
> [c.]     The defendant failed to return to confinement within the time fixed for the defendant's return;
>
> [d.]     The defendant's failure to return was willful, without sufficient justification or excuse;
>
> [e.]     The defendant intended not to return within the time fixed;
>
> [f.]     This happened in New Mexico on or about the ___ day of _____, ____.

UJI 14-2228. The use notes to the UJI provide that "[the escape from an inmate-release program] instruction is also to be used for escape from jail." UJI 14-2228 use note 1.

## B.     Fundamental Error

**{6}**     The State argued to the district court that because this case fell "between certain different kinds of escape," the jury instruction needed to "be modified to require certain things that maybe just escape from jail would not." The State therefore sought to instruct the jury using UJI 14-2228, escape from an inmate-release program, because it was "factually closest" to the circumstances of the case. The district court instructed the jury using a modified version of UJI 14-2228. The tendered instruction read as follows:

> For you to find [D]efendant guilty of escape from jail, the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.     [D]efendant was committed to the Otero County Detention Center for transport to the New Mexico Department of Corrections;
>
> 2.     [D]efendant was released from lawful custody or confinement for furlough purposes;

   3. [D]efendant failed to return to lawful custody or confinement within the time fixed for the defendant's return;

   4. [D]efendant's failure to return was willful, without sufficient justification or excuse;

   5. [D]efendant intended not to return within the time fixed;

   6. This happened in New Mexico on or about the 31st day of December, 2011.

Defendant did not object to the district court giving this instruction, and therefore failed to preserve his argument that the district court erred in giving this instruction. *See, e.g.*, *State v. Jimenez*, 2017-NMCA-039, ¶ 54, 392 P.3d 668 ("Because [the d]efendant failed to object to the instructions given at trial, [the d]efendant failed to preserve this issue[.]").

**{7}** We review unpreserved assertions of error in a jury instruction for fundamental error. *State v. Stevens*, 2014-NMSC-011, ¶ 42, 323 P.3d 901. In a fundamental error analysis, we begin by considering whether reversible error exists, such that "the jury instructions, taken as a whole, cause juror confusion by failing to provide the jurors with an accurate rendition of the relevant law." *State v. Suazo*, 2017-NMSC-011, ¶ 15, 390 P.3d 674 (alterations, internal quotation marks, and citations omitted); *see State v. Barber*, 2004-NMSC-019, ¶ 19, 135 N.M. 621, 92 P.3d 633 (noting that fundamental error begins at the same place as our reversible error analysis by considering "whether a reasonable juror would have been confused or misdirected by the jury instruction"). If reversible error exists, we then review the entire record, "placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether . . . Defendant's conviction was the result of a plain miscarriage of justice." *Id.* (internal quotation marks and citation omitted).

**{8}** It is the district court's duty to instruct the jury upon all questions of law essential for a conviction of any crime with which the defendant is charged. Rule 5-608(A) NMRA; *see, e.g.*, *State v. Lopez*, 1996-NMSC-036, ¶ 10, 122 N.M. 63, 920 P.2d 1017; *Jackson v. State*, 1983-NMSC-098, ¶ 6, 100 N.M. 487, 672 P.2d 660. The failure to instruct the jury on an essential element of the offense charged generally constitutes fundamental error requiring reversal. *Jackson*, 1983-NMSC-098, ¶ 6 (concluding incorrect instruction was fundamental error because it did not contain necessary elements of the crime); *see also State v. Samora*, 2016-NMSC-031, ¶ 29, 387 P.3d 230 ("Fundamental error occurs when jury instructions fail to inform the jurors that the State has the burden of proving an essential element of a crime and we are left with no way of knowing whether the jury found that element beyond a reasonable doubt." (internal quotation marks and citation omitted)).

**{9}** Another type of fundamental error is one that takes from the defendant a right that was "essential to his defense and [that] no court could or ought to permit him to waive." *State v. Davis*, 2009-NMCA-067, ¶ 13, 146 N.M. 550, 212 P.3d 438 (internal

quotation marks and citation omitted); *see id.* (reversing conviction where district court instructed jury on negligent and intentional child abuse, but the defendant was not charged with negligent child abuse), *abrogated on other grounds by State v. Montoya*, 2015-NMSC-010, ¶¶ 38, 69, 345 P.3d 1056 (concluding that reckless child abuse was lesser-included offense of intentional child abuse). One such right is the right to due process, which requires that the state "provide reasonable notice of charges against a person and a fair opportunity to defend; rights which may not be ignored or trivialized." *Davis*, 2009-NMCA-067, ¶ 14 (internal quotation marks and citation omitted). Because "[a] defendant in a criminal case is entitled to know what he is being charged with and to be tried solely on those charges[, i]t is improper to instruct the jury as to a crime not formally charged if that crime is not a lesser-included offense of the crime formally charged." *Id.* ¶ 8 (internal quotation marks omitted) (citing *State v. Johnson*, 1985-NMCA-074, ¶¶ 25-26, 103 N.M. 364, 707 P.2d 1174 (reversing negligent arson conviction that was charged only as malicious or willful arson)). "Where the district court submits an uncharged crime to the jury as a basis for conviction, it deprives a defendant of his constitutional right to notice and the opportunity to prepare a defense." *Davis*, 2009-NMCA-067, ¶ 15. As such, "[a]llowing [a d]efendant's conviction to stand where there is a possibility that he was convicted of a crime for which he was not charged would result in a miscarriage of justice[,]" and a conviction for a crime with which the defendant was not charged therefore constitutes a due process violation that amounts to fundamental error. *Id.* ¶ 16; *see State v. Leal*, 1986-NMCA-075, ¶ 15, 104 N.M. 506, 723 P.2d 977 ("A defendant may not be convicted of a crime for which he was not charged or tried."); *Johnson*, 1985-NMCA-074, ¶ 26 (noting that a criminal defendant "is entitled to know what he is being charged with and to be tried solely on those charges," and that "[i]t is improper to instruct the jury as to a crime not formally charged).

## C.    The District Court Committed Fundamental Error

{10}    Section 30-22-8 and Section 33-2-46 define distinguishable offenses with different essential elements and penalties. *See State v. Trujillo*, 1987-NMCA-141, ¶ 5, 106 N.M. 616, 747 P.2d 262 (explaining that various escape statutes "differ as to the nature of the authority under which the offender is confined" and the place from which escape is made). The distinctions between the essential elements required for each type of escape are clear in a comparison of UJI 14-2221 (escape from jail) and UJI 14-2228 (escape from an inmate-release program). While the first element of UJI 14-2221 is similar to the first element UJI 14-2228 in that both require commitment, either to jail or to an institution, escape from an inmate-release program contains three essential elements that are entirely absent from the essential elements required for escape from jail. UJI 14-2228 requires willfulness and an intent not to return, *see State v. Rosaire*, 1997-NMSC-034, ¶ 15, 123 N.M. 701, 945 P.2d 66 (establishing willfulness as an essential element of escape from an inmate-release program), as well as a reason for the prisoner's release. *See* UJI 14-2228 comm. cmt. ("[T]he essential elements include the specific reasons for the prisoner's release."). None of these elements are comparable to the escape element required under UJI 14-2221 for escape from jail.

**{11}** Given the significant differences between essential elements of escape from jail and escape from an inmate-release program, there is a significant probability that the jury convicted Defendant based on a deficient understanding of the law regarding escape from jail under Section 30-22-8. Furthermore, it is clear that the jury, while instructed on release, willfulness, and intent, was never instructed on escape—an essential element of escape from jail. Finally, the State did not charge Defendant with escape from an inmate-release program and never intended to present escape from an inmate-release program as a lesser-included offense of escape from jail. *See Davis*, 2009-NMCA-067, ¶ 9 ("A defendant is considered to be on notice to defend against uncharged lesser-included offenses."). Yet, the jury was instructed on that crime. A crime for which he never received notice and was ultimately convicted. It is a basic tenet of criminal law that "the charge must be appropriate and the prosecution must prove each essential element of the crime *as defined by statute*." *Trujillo*, 1987-NMCA-141, ¶ 12 (emphasis added); *see id.* ¶ 13 (reversing the defendant's conviction where he had been charged under inapplicable statute). Defendant's conviction and sentence, based on the elements of a crime for which he was not charged must therefore be reversed.

**D.      UJI 14-2221 and UJI 14-2228 Cannot Be Used Interchangeably**

**{12}** On appeal, the State argues that UJI 14-2228 can be used instead of UJI 14-2221 to instruct the jury on escape from jail, relying on the use note to UJI 14-2228 that provides, "[t]his instruction is also to be used for escape from jail" as well. UJI 14-2228 use note 1. To the extent that this issue requires interpretation of the statutes referenced in the Committee Commentary to UJI 14-2228, we apply a de novo review. *State v. Marshall*, 2004-NMCA-104, ¶ 6, 136 N.M. 240, 96 P.3d 801.

**{13}** While the use note allowing for UJI 14-2228 "to be used for escape from jail" contains no conditional language, the use note for UJI 14-2221 allows for the use of UJI 14-2228 only *if* the escape is from a jail release program. UJI 14-2221 use note 1 (emphasis added). The seemingly contradictory language of these two provisions can be reconciled through a consideration of the Committee Comments to UJI 14-2228, which provide that an escape from custody is governed by Section 30-22-9 (escape from the penitentiary) unless the prisoner is released for "one of the specific purposes set forth in Section 33-2-44 or [NMSA 1978, Section] 33-2-45 [1975]." UJI 14-2228 comm. cmt.; Section 33-2-44 (allowing for release "to work at paid employment in private business or in public employment, or to attend a school"); Section 33-2-45 (allowing for release to contact prospective employers, attend job or school interviews, or for "any other reason consistent with pre-parole analysis and parole prediction, the inmate-release program and the public interest").

**{14}** If the release is for a purpose defined in Section 33-2-44 or Section 33-2-45, the "inmate-release program" requirement is met, and the instruction for escape from an inmate-release program is to be given. UJI 14-2228 comm. cmt. The committee commentary to UJI 14-2228 therefore creates a system by which escape from a penitentiary is the appropriate instruction to be given, unless there are specific facts that would warrant giving the instruction for escape from an inmate-release program.

**{15}** Escape from jail under UJI 14-2221 follows a similar structure; an escape from jail is analyzed according to the essential elements contained in UJI 14-2221, but when the State can demonstrate the escape was made from a jail-release program, the use notes to UJI 14-2221 indicate UJI 14-2228 should be used to properly instruct on the essential elements of escape from a jail-release program. UJI 14-2221 use note 1 (stating that "[i]f the escape is from a jail[-]release program, use UJI 14-2228").

**{16}** Reading the relevant statutes, UJIs, and use notes together as a whole, we conclude that UJI 14-2228 was intended to be used when a prisoner escapes from a release program initiated in a jail rather than a penitentiary. Inherent in our conclusion is the distinction between a penitentiary and a jail, which the Legislature found relevant in creating two separate offenses for escape from jail and escape from a penitentiary, *see State v. Najar*, 1994-NMCA-098, ¶ 6, 118 N.M. 230, 880 P.2d 327 (stating that with regard to jail and penitentiary, "the place or constructive place of incarceration depends on the length of the sentence imposed"), but which the State virtually ignores when arguing that UJI 14-2228 and 14-2221 can be used interchangeably. It makes little sense to allow UJI 14-2228 to supplant UJI 14-2221 in cases involving escape from jail in light of the inapposite elements required by the entirely different statutes. *Compare* Section 33-2-46 (escape from an inmate-release program), *with* Section 30-22-8. Our interpretation also comports with the plain language of Section 33-2-46, which criminalizes an escape from an inmate-release program and identifies the components of an escape from an inmate-release program generally, without specifying whether that offense must arise from a release program originating in a jail or in a penitentiary. Section 33-2-46.

**{17}** Finally, nothing in the record suggests that the circumstances of Defendant's alleged "release" rose to the level of an inmate-release program warranting use of UJI 14-2228. The modified version of UJI 14-2228 that was given to the jury in this case identifies the reason for Defendant's release as "furlough purposes." However, furlough is not one of the "specific purposes" for release authorized by statute, and "specific reasons for the prisoner's release" are an essential element for escape from an inmate-release program. UJI 14-2228 comm. cmt. ("Since this is a specific offense . . . the essential elements include the specific reasons for the prisoner's release. Unless the prisoner is released for one of the specific purposes set forth in Section 33-2-44 or [Section] 33-2-45[,] an escape from custody by the prisoner is governed by . . . [the] escape from the penitentiary" statute); *see* Section 33-2-44 (listing work at paid employment or school attendance as proper purposes); Section 33-2-45 (listing "contacting prospective employers, attendance at job or school interviews or any other reason consistent with pre-parole analysis and parole prediction, the inmate-release program and the public interest"). Because the State did not assert or demonstrate that Defendant was released pursuant to a designated "release program" during furlough, there is no evidence to support the district court's decision to instruct the jury on escape from jail using UJI 14-2228 in lieu of 14-2221.

## II.       Sufficiency of the Evidence

**{18}**   We now turn to Defendant's argument that the evidence was insufficient to support his conviction in order to ascertain whether double jeopardy protections are implicated by retrying Defendant. *State v. Dowling*, 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d 903 ("If we find that sufficient evidence was presented at trial to support a conviction, then retrial is not barred."). Although Defendant's sufficiency argument focuses exclusively on the sufficiency of evidence according to UJI 14-2221's two elements, we must measure the sufficiency of the evidence against the instructions given at trial, even where those instructions were erroneous.[1] *See Dowling*, 2011-NMSC-016, ¶ 18; *see also Rosaire*, 1996-NMCA-115, ¶ 20 ("[Appellate courts] . . .review[] the evidence in light of the *defective* jury instruction given below[.]"). When reviewing for sufficiency, we consider "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Comitz*, 2019-NMSC-011, ¶ 16, 443 P.3d 1130 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* We view "the evidence in the light most favorable to the [s]tate, resolving all conflicts and indulging all permissible inferences in favor of the verdict." *State v. Romero*, 2019-NMSC-007, ¶ 51, 435 P.3d 1231 (internal quotation marks and citation omitted).

**{19}**   The State presented a certified copy of an order, titled "order revoking probation (commitment to the penitentiary)," in which the district court revoked Defendant's probation, sentenced him to two years and six months incarceration, and granted him furlough until December 31, 2011. Based on this order, the jury could reasonably conclude that Defendant was "committed to the Otero County Detention Center for transport to the New Mexico Department of Corrections" when his probation was revoked and he was sentenced to a term of incarceration and that Defendant was "released from lawful custody or confinement for furlough purposes."[2] The State also submitted the bench warrant issued for Defendant's arrest after he failed to report to the Otero County Detention Center on December 31, 2011, and a motion that the State filed on January 20, 2012, seeking to enforce the probation revocation based on Defendant's failure to report as ordered on December 31, 2011. Based on this evidence, the jury could reasonably conclude that Defendant "failed to return to lawful custody or confinement within the time fixed" for his return.

**{20}**   During trial, the jury also heard testimony that Defendant had twice been arrested, once under an alias, Deciderio Nieto, and once based on a mistaken belief

---

1 Defendant also challenges the propriety of the modifications to UJI 14-2228 that were used in the given instructions, and challenges whether the facts as alleged by the State are sufficient to constitute escape from jail. However, we need not address those arguments because such analysis is unnecessary in light of our discussion of UJI 14-2221 above and because we consider sufficiency in the context of the instructions actually given to the jury. *Dowling*, 2011-NMSC-016, ¶ 18.

2 The parties do not dispute that these events took place in Otero County, New Mexico. *See* UJI 14-2228 (requiring that events took place in New Mexico); *see generally State v. Carrillo*, 2017-NMSC-023, ¶ 32, 399 P.3d 367 (acknowledging that physical locations are proper subject of judicial notice and collecting cases allowing for judicial notice of geographical locations).

that he was Deciderio Nieto—a misidentification that Defendant later encouraged.[3] The State submitted, as evidence, an order granting the State's motion to enforce the probation revocation sentence, in which the district court noted that as of November 2014, Defendant was incarcerated as Deciderio Nieto in two other cases. From this evidence, the jury could reasonably infer that Defendant's use of the alias was intended to deceive law enforcement and prevent them from returning him to custody, thereby satisfying the requirement that the jury find Defendant's failure to return was done willfully and that Defendant intended not to return within the time fixed. *See, e.g., State v. Nozie*, 2009-NMSC-018, ¶ 32, 146 N.M. 142, 207 P.3d 1119 (acknowledging that "because an individual's intent is seldom subject to proof by direct evidence, intent may be proved by circumstantial evidence" (alteration, internal quotation marks, and citation omitted)); *State v. Hutchinson*, 1983-NMSC-029, ¶ 33, 99 N.M. 616, 661 P.2d 1315 ("Intent, as an element of a crime, is seldom susceptible of proof by direct evidence, and it may be inferred from a series of acts, occurrences and circumstances."). We conclude that the State presented sufficient evidence that, when taken in the light most favorable to the State, adequately supports Defendant's conviction under the instructions given to the jury.

### III.  Pre-indictment Delay Did Not Violate Defendant's Due Process Rights

**{21}**   We next address Defendant's argument that pre-indictment delay violated his right to due process. *See State v. Akers*, 2010-NMCA-103, ¶ 31, 149 N.M. 53, 243 P.3d 757 (addressing additional argument because, if meritorious, it would give the defendant greater relief); *State v. Lewis*, 1988-NMCA-015, ¶ 10, 107 N.M. 182, 754 P.2d 853 ("The Due Process Clause requires dismissal of the charges if it is shown that the pre[-]indictment delay [violated the defendant's due process.]"). After Defendant's failure to report on December 31, 2011, the State filed a motion on January 20, 2012, seeking enforcement of the sentence imposed at the revocation hearing. The State took no further action in the case until October 22, 2014, when it filed an indictment against Defendant. Defendant argues that although the State possessed the necessary evidence to bring charges against him for nearly two years, it withheld charges against him in order to keep him in custody during that time.

**{22}**   In determining whether pre-indictment delay denied a defendant the right to procedural due process, "we conduct an independent review of the record and the law." *State v. Palmer*, 1998-NMCA-052, ¶ 4, 125 N.M. 86, 957 P.2d 71 (internal quotation marks and citation omitted). To establish the denial of due process through pre-indictment delay, the defendant must show "prejudice to his or her defense as a result of the delay," and must demonstrate that "the state intentionally caused the delay in order to gain a tactical advantage." *State v. Fierro*, 2014-NMCA-004, ¶ 27, 315 P.3d 319 (internal quotation marks and citation omitted).

---

3 Although Defendant challenges the admissibility of this testimony, we need not address that argument here because even assuming it was improperly admitted, we include improperly admitted evidence in our analysis of sufficiency. *State v. Cofer*, 2011-NMCA-085, ¶ 20, 150 N.M. 483, 261 P.3d 1115.

**{23}** A defendant claiming error as a result of pre-indictment delay "must be able to show definite and not speculative prejudice." *Gonzales v. State*, 1991-NMSC-015, ¶ 8, 111 N.M. 363, 805 P.2d 630 (internal quotation marks and citation omitted). Defendant argues that the pre-indictment delay prejudiced his defense by depriving him of the possibility of concurrent sentencing. Defendant relies on *Zurla v. State*, 1990-NMSC-011, ¶ 23, 109 N.M. 640, 789 P.2d 588 which identified the "loss of the possibility of serving concurrent sentences" as an aspect of prejudice in the context of speedy trial. While Defendant's reliance on *Zurla* is not directly on point, the prejudice prong referenced in *Zurla* has been applicable to our case law concerning delay. *See State v. Lopez*, 2018-NMCA-002, ¶ 13, 410 P.3d 226 (discussing delay in sentencing); *see, e.g., State v. Garcia*, 2019-NMCA-056, ¶ 42, 450 P.3d 418 (addressing delay at the appellate stage of a case). Nevertheless, we are unpersuaded by the application of *Zurla* to this case.

**{24}** Defendant argues that he was prejudiced because "he spent the entire time in State custody, and lost the possibility of [receiving] concurrent sentences." Even if a lost possibility of serving concurrent sentences amounts to prejudice for purposes of a due process analysis, which we do not decide, Defendant's argument that he may have been able to prevail upon the district court to run his sentences concurrently is entirely speculative, and is therefore insufficient to establish prejudice here. *See State v. Maddox*, 2008-NMSC-062, ¶ 35, 145 N.M. 242, 195 P.3d 1254 (rejecting claim of prejudice in lost opportunity to serve sentences concurrently "because it is speculative as to how the district court may choose to exercise its discretion in sentencing"), *abrogated on other grounds by State v. Garza*, 2009-NMSC-038, ¶ 47-48, 146 N.M. 499, 212 P.3d 387.

**{25}** Because Defendant has failed to demonstrate prejudice to his defense, we need not proceed to the second prong of the test and consider whether Defendant made a prima facie showing that the State "knew or should have known delay was working a tactical disadvantage on [D]efendant." *Gonzales*, 1991-NMSC-015, ¶ 10.

**CONCLUSION**

**{26}** We reverse and remand for proceedings consistent with this opinion.

**{27} IT IS SO ORDERED.**

**M. MONICA ZAMORA, Chief Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JACQUELINE R. MEDINA, Judge**