This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40811**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**OMAR JUAREZ-ROCHA,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Bianca Ybarra, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**DUFFY, Judge.**

**{1}** Defendant appeals his conviction for possession of a stolen motor vehicle, advancing two arguments. First, Defendant contends that his conviction was based on an improper jury instruction for receiving stolen property, UJI 14-1650 NMRA, rather than the uniform jury instruction for possession of a stolen vehicle, UJI 14-1652 NMRA, resulting in fundamental error. Second, Defendant claims there was insufficient

evidence presented to support the jury's finding that Defendant knew or had reason to know that the vehicle in his possession was stolen. We affirm.

## BACKGROUND

**{2}** On February 8, 2020, the Carlsbad Police Department responded to a burglary at a local business where a significant amount of property, including three company trucks, had been stolen. About two weeks later, acting on an anonymous tip, officers discovered one of the stolen vehicles, a 1997 Dodge truck, located in the backyard of a property where Defendant was residing in a camper. Defendant was arrested and originally charged with one count of receiving or transferring a stolen vehicle in violation of NMSA 1978, Section 30-16D-4(A) (2009). Before trial, the prosecutor amended the charge to one count of "possession of stolen vehicles or motor vehicles." *See id.* At trial, the State presented two witnesses, Detective Chad Herrera of the Carlsbad Police Department, and Jason Alexander, the owner of the stolen 1997 Dodge truck. Subsequently, the jury convicted Defendant of one count of possession of a stolen motor vehicle. Defendant appeals.

## DISCUSSION

### I. Jury Instructions

**{3}** We first address Defendant's argument that his conviction should be reversed because the jury was instructed based on the UJI for receiving stolen property, UJI 14-1650, rather than the UJI for the offense he was charged with, possession of a stolen vehicle, *see* UJI 14-1652. The State argues that reversal is not warranted because the given instruction still required the jury to find every essential element of possession of a stolen vehicle. Because Defendant did not object to the jury instruction at trial, we review for fundamental error. *See State v. Grubb*, 2020-NMCA-003, ¶¶ 6-7, 455 P.3d 877; *State v. Caldwell*, 2008-NMCA-049, ¶ 22, 143 N.M. 792, 182 P.3d 775 ("'If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error.'" (quoting *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134)).

**{4}** "Fundamental error only exists if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or if substantial justice has not been done." *Caldwell*, 2008-NMCA-049, ¶ 22 (internal quotation marks and citation omitted). To determine whether the instructional error amounted to fundamental error, we evaluate whether the given instruction "would confuse or misdirect a reasonable juror due to contradiction, ambiguity, omission, or misstatement." *Id.* (internal quotation marks and citation omitted).

> Failure to use a uniform jury instruction, however, does not necessarily rise to the level of fundamental error. Instead, a jury instruction is proper, and nothing more is required, if it fairly and accurately presents the law.

> For fundamental error to exist, the instruction given must differ materially from the uniform jury instruction, omit essential elements, or be so confusing and incomprehensible that a court cannot be certain that the jury found the essential elements under the facts of the case.

*Id.* ¶ 24 (alteration, internal quotation marks, and citations omitted).

**{5}** In this case, the parties agree that the jury was instructed using the UJI for receiving stolen property. *See* UJI 14-1650. Jury Instruction No. 3 required the State to prove beyond a reasonable doubt each of the following elements of the crime:

1. The 1997 Dodge pick up truck had been stolen by another;

2. [D]efendant acquired possession [of] this motor vehicle;

3. At the time he acquired possession [of] this motor vehicle, [D]efendant knew or had reason to believe that it had been stolen;

4. The property was a motor vehicle;

5. This happened in New Mexico on or about the 21st day of February, 2020.

In comparison, the uniform instruction for possession of a stolen vehicle contains the following essential elements:

1. [D]efendant had possession of [vehicle];

2. This vehicle had been stolen or unlawfully taken;

3. At the time [D]efendant had this vehicle in his possession he knew or had reason to know that this vehicle had been stolen or unlawfully taken;

4. This happened in New Mexico on or about the ___ day of ___, ___.

UJI 14-1652.

**{6}** Defendant relies on this Court's analysis in *Grubb* to argue fundamental error occurred because possession of a stolen vehicle and receiving stolen property are different offenses with different essential elements, and the instructional error in this case allowed Defendant to be convicted of a crime for which he was not charged. *See* 2020-NMCA-003, ¶¶ 9-11. In *Grubb*, the defendant was indicted on one count of escape from jail, but the jury was instructed using the UJI for escape from an inmate-release program. *Id.* ¶¶ 2, 4. Although the first element of both UJIs required commitment to a jail or an institution, the instruction for escape from an inmate-release program required

three additional essential elements: willfulness, an intent not to return, and a reason for the prisoner's release. *Id.* ¶ 10. Additionally, the jury was never instructed on the essential element of escape, which is required under the UJI for escape from jail. *Id.* This Court held that the jury functionally convicted the defendant of an uncharged crime because the elements were materially different, resulting in fundamental error. *Id.* ¶ 11.

**{7}** In the present case, Defendant fails to demonstrate any material difference between the given instruction and the elements listed in the UJI for possession of a stolen vehicle. Unlike the instruction given in *Grubb*, which omitted an essential element and contained additional elements that likely caused juror confusion, the instruction in this case includes all the essential elements of possession of a stolen vehicle contained in UJI 14-1652: (1) that Defendant had possession of the vehicle; (2) that the vehicle had been stolen or unlawfully taken; (3) that at the time Defendant had this vehicle in his possession he knew or had reason to know that this vehicle had been stolen or unlawfully taken; and (4) that this happened in New Mexico.

**{8}** Defendant argues that the "crucial differences between the [two jury instructions are that t]he instruction that was given . . . required proof that the item was stolen 'by another' rather than 'had been stolen,' and that [Defendant] 'acquired possession' as opposed to 'had possession.'" Although Defendant points to these slight differences in language, he has not indicated why these differences are material, misstate or omit the essential elements of the offense, or are otherwise confusing or incomprehensible. *See Caldwell*, 2008-NMCA-049, ¶ 24. In fact, the given jury instruction substantially tracks the language of Section 30-16D-4(A). *See Caldwell*, 2008-NMCA-049, ¶ 25 ("Jury instructions that substantially follow the language of the statute or use equivalent language do not constitute fundamental error." (internal quotation marks and citation omitted)).

**{9}** We observe as well that although receiving stolen property and possession of a stolen vehicle are separate statutory offenses, they are in substance a general and specific version of the same crime. As Defendant correctly acknowledges, "UJI 14-1650 is for use in cases of generic stolen property" under NMSA 1978, Section 30-16-11(A) (2006), while UJI 14-1652 "is specific to motor vehicles" under Section 30-16D-4. *See* § 30-16-11(A) (stating that receiving stolen property means "intentionally to receive, retain, or dispose of stolen property knowing that it has been stolen or believing it has been stolen"); § 30-16(D)-4(A) (stating that receiving or transferring a stolen motor vehicle consists of "a person . . . who has in the person's possession any vehicle that the person knows or has reason to believe has been stolen or unlawfully taken"). The difference in the offenses lies not in the elements of the crimes, but in the punishment selected by the Legislature. A conviction for generic stolen property is punished based on the value of the property stolen, *see* § 30-16-11(D)-(H), whereas a conviction for possession of a stolen vehicle is punished as a felony regardless of the value of the vehicle, *see* § 30-16D-4(B). Aside from the difference in penalty, the elements of the crimes are materially the same and were intended to capture the same conduct—receipt or possession of stolen property. Given that the language of the jury instruction tracks the language of the receiving or transferring of stolen vehicles statute and there

are no material differences, misstated or omitted essential elements, or confusing language, there is no basis for holding that fundamental error occurred.

**{10}** Defendant's remaining arguments are premised on the idea that he was convicted of a crime for which he was not charged. For example, Defendant contends that his conviction of a crime not formally charged deprived him of his constitutional rights to notice and the opportunity to prepare a defense. Likewise, Defendant asserts that he was unable to pursue a defense available under Section 30-16-11. But this conflates the issue. Defendant was not convicted of receiving stolen property, he was convicted of possession of a stolen vehicle, and we are tasked with determining only whether the jury instruction given at trial failed to properly instruct the jury as to the essential elements of the crime for which Defendant was convicted. Comparing Jury Instruction No. 3 to the uniform instruction for possession of a stolen vehicle, we fail to see any material or substantive differences, missing essential elements, or language that would confuse or misdirect a juror. Consequently, we hold that the instructional error in this case did not amount to fundamental error.

## II.     Sufficiency of the Evidence

**{11}** Defendant additionally argues that there is insufficient evidence to prove he knew or had reason to know that the vehicle was stolen. "In reviewing the sufficiency of evidence used to support a conviction, we resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and inferences to the contrary." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. "Although appellate courts are highly deferential to a jury's decisions, it is the independent responsibility of the courts to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (internal quotation marks and citation omitted). We look to the jury instructions to determine what the jury was required to find to convict Defendant beyond a reasonable doubt. *See State v. Garcia*, 2016-NMSC-034, ¶ 17, 384 P.3d 1076 ("Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alteration, internal quotation marks, and citation omitted)).

**{12}** Defendant limits his challenge to element three, which required the jury to find that "[a]t the time [Defendant] acquired possession [of] this motor vehicle, [D]efendant knew or had reason to believe that it had been stolen." "A person has knowledge of stolen property if [they] either (1) actually know[] the property is stolen, (2) believe[] the property is stolen, or (3) has [their] suspicions definitely aroused and refuses to investigate for fear of discovering that the property is stolen." *State v. Sizemore*, 1993-NMCA-079, ¶ 9, 115 N.M. 753, 858 P.2d 420. Defendant contends "[t]he State's only evidence of mens rea was that [Defendant] covered the truck with a tarp and put screen doors on top of the tarp." This is not the case.

**{13}** At trial, Detective Herrera testified that Defendant lived in a camper trailer located approximately ten feet away from the stolen 1997 Dodge truck. Detective Herrera

recalled that while Defendant was voluntarily uncovering the truck, he explained how an unknown third party dropped the truck off and asked him if he could leave the truck there. Defendant told Detective Herrera that after agreeing to keep the truck, he covered it with a tarp "because he did not want somebody to come and steal anything off of it, or steal it." According to Detective Herrera, Defendant used three screen doors to weigh the tarp down. Defendant did not cover a red truck positioned immediately next to the stolen 1997 Dodge, even though it had various pieces of wood, a propane bottle and other items in the bed.

**{14}** Detective Herrera testified that Defendant did not have the keys to the 1997 Dodge truck, bill of sale, title, or proof of insurance. Detective Herrera noted that because the truck was inoperable, it would have had to have been pushed to the property, and testified the steering column had wires hanging down—a clear indication of an attempt to hot wire the vehicle. As well, Mr. Alexander (the owner of the stolen 1997 Dodge truck) testified as to the condition of the truck when it was found at Defendant's residence. Mr. Alexander stated that the truck had orange ratchet straps holding the doors closed on both sides of the vehicle because the locks had been broken. According to Mr. Alexander, the ratchet straps were not a part of the equipment in his truck, nor were they used in his facility or in the daily operation of the truck. Mr. Alexander also described that the truck's window had been busted out, the steering column had been destroyed, items such as the battery had been stripped from underneath the hood of the vehicle, and the air compressor and all the tools that were in the truck were gone.

**{15}** Viewing this evidence in the light most favorable to the State, resolving all conflicts and making all permissible inferences in favor of the jury's verdict, we conclude that there was sufficient evidence to support the jury's verdict. Taken together, Defendant's explanation that an unknown third party dropped off the truck, the condition of the truck, and Defendant's attempt to conceal the truck by covering it with a tarp and screen doors support an inference that Defendant knew or should have known that the vehicle was stolen. *See State v. Duran*, 2006-NMSC-035, ¶ 7, 140 N.M. 94, 140 P.3d 515 ("Intent is subjective and is almost always inferred from other facts in the case, as it is rarely established by direct evidence." (internal quotation marks and citation omitted)); *State v. Elam*, 1974-NMCA-075, ¶ 21, 86 N.M. 595, 526 P.2d 189 (stating that possessing recently stolen property, if not satisfactorily explained, is a circumstance to be considered in determining the guilt of the defendant). Defendant did not have keys to the truck, and the detailed evidence of the truck's condition—in particular, the orange ratchet straps holding the doors together due to their damaged locks, the busted window, the missing battery, and the stripped steering column with wires hanging down—is strong circumstantial evidence that Defendant knew or would have had reason to know the truck had been stolen. To the extent that Defendant's argument on appeal invites us to consider hypothetical evidence that the State could have presented, we decline because the jury was free to reject Defendant's version of the facts. *See Rojo*, 1999-NMSC-001, ¶ 19.

**{16}** Defendant's conviction for possession of a stolen vehicle is supported by sufficient evidence and we therefore affirm the conviction.

**CONCLUSION**

**{17}** For the foregoing reasons, we affirm.

**{18} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**GERALD E. BACA, Judge**

**KATHERINE A. WRAY, Judge**